Mr. Justice No it
delivered the opinion of the court:
The following may be considered as the grounds taken for a new trial in this case, though not in the order, nor in the precise language of the brief :
1st. The facts and circumstances attending the transaction were not such as to constitute a riot.
2d. That as the defendants were acting as a patrol, it could not be a riot, even though similar conduct would be in persons acting without any authority.
3d. That the two young men belonged to the company of Capt. Cole, and acted under his authority, and therefore were not answerable for the part which they took in the affair. ,
4th. If there was any unlawful act committed, it was the beating of the negroes which is made an indictable of-fence by an act of the Legislature, and a specific penalty imposed, and therefore they ought to have been indicted under the act, and not for a riot.
1st. A riot is defined to be the assemblage of three or *120 more persons, with an intent mutually to assist one another against ary one who shall oppose them in the execution of some enterprize of a private nature, with force and violence against the peace or to the manifest terror of the people, whether the act were of itself lawful or unlawful, provided they proceeded to execute the thing.intendedv (1 Haw. ISS.J
The first ingredient is, that there must he three persons concerned. That requisite was certainly established in this case.
The second.is, that there must he an understanding mutually to assist each other. Whether such concert exist or not, may Le proved by positive testimony, or it may be inferred, from circumstances. In this case the defendants are found to have entered the plantation of the prosecutor in the d^acl hour of the night. They commenced their career with the firing of guns. They proceeded to kill his dogs, heat his negroes, and abuse himself, and that ■within the precincts of his domicile and the hearing of his family. To this may be added, that they were armed with swords and guns. TVhat could be better calculated to excite alarm, or disturb their repose ? If it had been proved that all the acts enumerated had been committed, by one of the party, the others being present, the only inference which could have been drawn from it, would have been, that they were all concerned. For what other purpose could they have been there at that unusual hour of the night ? For what other purpose were they armed in that unusual manner ? For no other purpose that can be perceived but that of committing the very outrages which were committed. But that is not left to inference. It is admitted that Cole was the leader of the party ; Gaskins acknowledged that he fired a gun. The young men were seen thrusting their swords through the seams of the floor where the dogs were found cut to pieces. The negro woman had been stricken with a sword, and “the two young men only were armed in that manner, and their whole deportment manifested a co-operation.
*121 Thirdly. It must be an enterprize of a private nature. There is no pretence that their object was to reform the government, to remedy any public wrong, or to effect any other object of a public nature. It could only have been to injure an individual by a trespass Upon his property, and an abuse of his person. It was contended that there was no essential injury done to the prosecutor, or to his property. But that is not material. The killing of a dog, the beating of a negro, and the pulling down of a house, are all equally unlawful acts. They differ only in degree ; and for the purposes of this prosecution, one is as unlawful as the other, and no more. And lastly, it must be against the public peace, of to the terror of the people. I have anticipated this ground in the remarks which I have already made. I have shewn that the whole transaction was against the peace, and calculated to excite terror and alarm. All the facts therefore necessary to constitute a riot were clearly established.
2nd. The next question is, whether they were acting as a patrol, and if they were, whether that was a justification of their conduct. Whenever a person is proved guilty of acts prima facie, unlawful, and would justify himself under any particular authority, it is incumbent on him to produce his authority, and shew 'that he was entitled to the character which he assumed ; and such justification must be proved by the ordinary rules of evidence. If the defendants allege that they were a patrol, it was incumbent on them to prove it. The evidence was in their possession. The prosecutor had not the means of disproving it. It is contended however that the declaration of Cole was evidence of the fact, and that the prosecutor recognized them as such. Whenever an attempt is made to fix a crime on a person by his own. confession, it must be taken altogether, as well that part which goes to his exculpation as that which goes to establish his guilt. But that rule is not applicable to this case. The confession of the defendant has not been relied on, on the part of the prosecution. All the facts have been proved by eye-wit *122 nesses who were present when they were committed. If the defendants had been sued for the penalty imposed by the act on a patrol for abusing their authority, proof of their acting in that character need not have been produced on their part, because the action itself would have been, an admission of the fact. But the mere submission of a person to the exercise of an assumed authority, is no admission of the legitimacy of it. The defendants cannot protect themselves from the penalty due to their offence by the peaceable and unresisting conduct of the prosecutor. There is then no evidence to support that part of the defence. It has been made a question, whether the captain of a beat company can constitute himself the captain of a patrol, and although that question is not necessarily involved in this case, it may be of some importance that it should be decided. The patrol act makes it the duty of the “ commanding officer of each and every beat company, to cause to be made out a roll for each patrol, district, which shall include the names of all free white male inhabitants above the age of 18 years, residing within the said patrol districts, &c.” It makes it the duty of the “commanding officer of each and every beat company at every regular petty muster to prick off from the roll of each patrol district at his discretion, any number of persons who shall perform the duty hereinafter prescribed until the next petty muster, and to every patrol, the commanding officer of the company shall appoint some prudent and discreet person as commander.” The act then proceeds to prescribe the duty of the patrol, and direct the manner in which it shall be performed. And if any of the commanders of the patrol abuse their authority, they may be reported to the commanding officer of the beat company, who.is required to order a court-martial, &c.— Now we cannot suppose that the Legislature intended any thing so absurd, as that .the captain of the company should appoint himself a captain of the patrol; much less that he should be returned to himself for misconduct; that he should appoint a court-martial to try himself, and that he *123 should preside over the court by which he was to be tried $ yet we must believe that the Legislature intended all these inconsistencies in order to give the act the construction contended for by the defendant. It must therefore appear manifest that the duties of the commander of a company are incompatible with those of a commander of a patrol ; and that if he was actually performing the duties of a captain of patrol, he was assuming a character not authorized by the act, and performing, voluntarily, duties which are inconsistent with those enjoined by it. Such dereliction of duties positively enjoined for the performance of one not required, even though permitted, would of itself beget suspicions, particularly when exercised in the manner this was. But admitting this was a regularly organized patrol, it will not aid the defendants. A patrol is not authorized to announce its approach with the firing of guns, to commence its operations by killing a man’s dogs whose plantation it has entered, carry them on by beating his negroes, and conclude with abusing himself. If circumstances existed which could in any manner excuse such conduct, or which rendered any degree of violence necessary, such necessity must be made to appear; hut on this occasion, it is not even pretended. It is contended however that it could not be a riot, because ,tbe original associátion was lawful. But it cannot be maintained that merely because a body of men are engaged in a lawful enterprize they will not be responsible for the abuse of their authority. — ■ Thus if the sheriff should raise the posse comitatus for the purpose of taking a felon, or suppressing a riot, and should on his way to the execution of his authority turn aside and attack a peaceable unoffending citizen, or tear down his house, he and those concerned with him would certainly be answerable for such an outrage. Whether it would amount to a riot would depend upon the circumstance whether three or more confederated together to assist each other to commit the unlawful act. For if persons who have assembled for a lawful purpose do after-wards associate together to commit an unlawful act, such *124 association will be considered an assembling together for that purpose. (1 Haw. 156.) And if a patrol who originally assembled for the purpose of performing a lawful duty afterwards unite in committing a breach of the peace, it is as much a riot as if the original assemblage had been for that purpose. Would it not be a melancholy s'tate of society where the law was otherwise. The prosecutor said he was actually obliged to remove his family to Charleston, to relieve them from the constant alarm in which they were kept by the turbulent conduct of the patrols. If a person is botad to submit to have his property injured, his person abused, the sovereignty of his house, invaded and the repose of his family disturbed, merely because the persons engaged in it are acting under the colour of authority, we are subject to a state of things even worse than that against which they were intended to afford us protection. Patrols are entrusted with high and important powers. The line of their duty may not always be distinctly marked out. They are many times composed of men not very competent to form correct opinions of the extent of their powers : I would not, therefore, be very astute in searching out means to punish those who through an honest, though mistaken zeal in the performance of their duty had been quilty of small excesses, or who from mistaken views of their powers had exceeded the bounds of their authority. But the more extensive the power, the more necessary it becomes to confine the exercise of it within its legitimate bounds and the more criminal is the abuse ofit. In this case, I can see no room to doubt but that the association was for purposes as unlawful as their conduct was unauthorized ; and that their offence is aggravated by an attempt to cloak it under the veil of authority.
3rd. With regard to the third ground, there was no evidence that the two young men belonged to the company or were under the command of captain Cole. Indeed, if he had no right to command, they were under no obligation to obey. But all these questions were distinctly *125 submitted to the jury, and I see no reason to be dissatisfied with their verdict.
Lance <§• White, for the motion.
Hayne, Att’y Gen. contra.
4th.' The last ground is attempted to be supported by the misapplication of a rule of law which of itself is admitted to be correct. Where an act" imposes a penalty and points out the manner by which that penalty shall be recovered, that method, arid that alone, must be pursued. If the prosecutor had sued for a penalty under the act, the method prescribed by the act must have been pursued. But he is prosecuting for a common law offence, according to the most usual method known to the common law before this act was passed, and which has not been impaired nor altered by the act. The -verdict is on every ground entitled to the support of the court, and the jnotion therefore must be refused.
Justices Colcock, Johnson, Richardson and Huger, concurred.