## CONEY *v.* THE STATE.

To constitute the offense of riot, there must be not only a common intent on the part of two or more persons to do an unlawful act of violence or some other act in a violent and tumultuous manner, but also concert of action in furtherance of such intent.

*Argued June 17,—Decided July 23, 1901.*

Indictment for riot. Before Judge Adams. City court of Dublin. April 22, 1900.

*Griner & Williams,* for plaintiff in error.
*F. G. Corker, solicitor,* contra.

LUMPKIN, P. J. The plaintiff in error, Green Coney, was jointly indicted with Robert Jordan for the offense of riot. The sole question here presented is whether or not, under the evidence introduced in behalf of the State, the conviction of Coney can lawfully be sustained. There was testimony to the following effect: Coney and Jordan were seen standing about a hundred yards from a house where a frolic was in progress, and were heard to say, "Let's go and break up the God damned thing. It aint no count nohow." They then went to the house and entered it. Jordan joined in a game that was being played, having for his partner a girl named Ella Nobles. Coney walked across the room and kissed this girl. This she did not resent, but Jordan said, "Look out; that is my girl!" Thereupon, one Baker said to Jordan, "Mind out; that is my kid!" and they began "fussing" with each other and drew weapons. In this altercation Coney took no part. The girls began to leave the house, and Coney was heard to say, "God damn it! I am in my liquors!" A witness went to him and asked him to stop cursing, telling him "this was no negro frolic." He replied "he was sure that it was no white man's frolic." This witness testified that he saw Coney "do nothing, but did hear him curse." After talking with him as above set forth, the witness "got the girls back in the house, and the frolic went on as before."

Section 354 of the Penal Code declares that: "If two or more persons do an unlawful act of violence, or any other act in a violent and tumultuous manner, they shall be guilty of a riot." There must be concert of action on the part of two or more persons in furtherance of a common intent. *Prince* v. *State,* 30 *Ga.* 27; *Stafford*

v. *State*, 93 *Ga.* 207 ; *Dixon* v. *State*, 105 *Ga.* 787 ; *Tripp* v. *State*, 109 *Ga.* 489. "The mere making a noise or behaving tumultuously will not alone constitute riot, in the absence of any violence." *Barron* v. *State*, 74 *Ga.* 833. It does not appear that Coney actually did more than this, notwithstanding he had expressed a willingness to join in a project to "break up" the frolic on the ground that it was "no count nohow." On entering the house, neither he nor Jordan proceeded to carry this project into execution. On the contrary, the latter immediately entered into the merrymaking, while Coney, left to his own resources, embarked upon a wholly independent plan of diversion which called forth a protest on the part of Jordan. Baker was the aggressor in the quarrel which ensued between him and Jordan, and neither by word nor act did Coney participate therein. Certain it is that he did not join with Jordan in any overt act of violence, nor did the latter take part with him in the disturbance which he created by his drunken misbehavior. This being so, the case falls squarely within the ruling announced in *Tripp* v. *State*, supra, in which it was held that "where, in a given case, it is shown that while two persons were in company one was guilty of an unlawful act of violence, and the evidence fails to disclose any participation by the other in such act, and there were no circumstances from which a common intent to do the act might be inferred, a conviction can not lawfully stand."

*Judgment reversed.　All the Justices concurring.*