## 19575

Rebecca B. CORBIN, as Administratrix of the Estate of Ervin Corbin, Respondent, v. Oscar E. PRIOLEAU, as Temporary Administrator of the Estate of Richard Dickerson, and Gene Broome, Inc., of whom Oscar E. Prioleau as Temporary Administrator of the Estate of Richard Dickerson, is, Appellant.

(194 S. E. (2d) 875)

172

*J. Reese Daniel, Esq.,* of Columbia, *for Appellant,*

*Messrs. Henry Hammer, J. Carlisle Oxner, Jr.,* and *How-Hammer,* of Columbia, *for Respondent,*

February 27, 1973.

BRAILSFORD, Justice:

This wrongful death action arose out of the same fatal smashup of a station wagon belonging to a Columbia drive-in restaurant which was involved in *Boykin v. Prioleau,* 255 S. C. 437, 179 S. E. (2d) 599 (1971). The driver and three occupants of the car were employees of the restaurant. The fourth passenger was plaintiff's intestate, Ervin Corbin, who joined the employees sometime after they left work at 2:30 A.M. on December 18, 1966. All of the occupants of the station wagon, except Willis Haymon, a young employee of the restaurant, were killed when it careened into a building at the intersection of Farrow Road and Beltline at 5:30 A.M.

The defendant, who is the administrator of the estate of Richard Dickerson, the deceased driver, appeals from a verdict for plaintiff, assigning as error the refusal of the court to direct a verdict upon the ground that "the only reasonable inference from all of the testimony was that the plaintiff was guilty of contributory negligence and recklessness in knowingly riding with an obviously drunk driver."

The surviving member of the group testified that during several hours of riding about between leaving work and the collision, the party visited two nightclubs and, finally, a Bar-B-Q restaurant on Farrow Road. He testified that Corbin was the only one of the five who appeared to be drunk. He estimated that Dickerson drank a total of four or five bottles of beer, and perhaps a small quantity of wine, before the collision, and testified that he did not appear to be intoxicated. On leaving the Bar-B-Q place, Dickerson told the witness that he was going to take him home. When questioned about Dickerson's condition at that time, the witness stated, "(h)e seemed to be allright 'til he start going real fast. I knew something was wrong then." Dickerson, disregarding the requests of the occupants of the car to slow down, speeded up to some eighty miles per hour and almost

immediately lost control. This acceleration occurred within a block or two of leaving the Farrow Road restaurant, and the occupants of the station wagon had no opportunity to get out after the driver's recklessness manifested itself.

We think it apparent that under this testimony, standing alone, the issue of whether Corbin was contributorily reckless in riding with an obviously intoxicated driver was, at best from defendant's standpoint, for the jury.

The only other testimony on the point was that of Lt. James K. Wilson, director of the chemical laboratory of South Carolina Law Enforcement Division. He testified that on December 19, he tested for alcoholic content a blood sample taken from the body of Richard Dickerson and delivered to the laboratory by Coroner Wiles. He found the content of alcohol to be an enormous .49 percent. He testified that a person with this concentration of alcohol in the blood stream would be noticeably drunk; further, according to some authorities, a concentration of anywhere from .35 percent, upward, might cause death. However, the witness did not know how many hours elapsed after death before the specimen of blood was taken, nor from what part of the body it came, nor whether there was unabsorbed alcohol in the stomach at the time of death, nor when the specimen was delivered to the laboratory. He only knew that the label on the specimen was dated December 18, and that the test was run on December 19. The witness conceded that these unknown factors might result in a variation between the concentration of alcohol in the specimen tested and that in the circulating blood at the time of death. The record does not indicate the extent of this possible variation, but plaintiff has cited medical authority, which has not been challenged by defendant, to the effect that, under given conditions, the alcoholic concentration in a specimen taken from the great vessels of the heart hours after death may be entirely unrepresentative of that in the circulating blood. Since only the concentration of alcohol in the circulating blood is of significance as evidence

of intoxication, on this record we cannot say that the court erred in refusing to accept the expert's testimony as conclusive that plaintiff's intestate knowingly took his chances on riding with an intoxicated driver. The issue of contributory recklessness in this respect was properly submitted to the jury.

During its deliberations the jury returned to the courtroom with the request that part of the charge on contributory negligence be re-read. On this appeal, the defendant contends that the court's response was inadequate. We disagree. The jury indicated its satisfaction with the court's summary of the law applicable to the defense of contributory negligence and recklessness, to which counsel expressly disclaimed having any exception. We find no error in the court's failure to adopt counsel's suggestion that the jury be recharged in greater detail concerning riding with an obviously intoxicated person as recklessness. This was fully covered in the original charge and again called to the jury's attention in the additional instructions. No more was required.

Appellant's final exception charges that the court erred in holding that it was bound by our decision in *Boykin v. Prioleau, supra,* to submit the case to the jury. We agree that our former decision did not control the trial of this case. Since, however, we have held that the evidence at this trial required submission of the issues to the jury, it is immaterial if the trial judge felt that this result was required by *Boykin.*

Affirmed.

Moss C. J., and Lewis, Bussey and Littlejohn, JJ., concur.