## 1676

The STATE, Respondent v. Jackie Ted GARRETT, Appellant.

(406 S.E. (2d) 910)

Court of Appeals

*Assistant Appellate Defender M. Anne Pearce of South*

*Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *Amie L. Clifford,* Columbia, and *Sol. Larry F. Grant,* York, *for respondent.*

Heard March 20, 1991; Decided June 24, 1991.

Rehearing Denied Aug. 5, 1991.

BELL, Judge:

Jackie Ted Garrett was indicted for aiding and conspiring with John L. Ramsey to violate S.C. Code Ann. Section 16-11-550 (1976), which makes it unlawful to communicate a threat concerning an attempt to intimidate any individual by means of an incendiary. Garrett was also indicted for violation of the cross burning statute, S.C. Code Ann. Section 16-7-120 (1976). He appeals his conviction on the aiding and conspiracy charges. We affirm.

Viewed in the light most favorable to the State, the evidence discloses the following facts.

Jackie Ray Childers and his wife Brenda were hired to do some construction work at Garrett's house. In May, 1989, while the work was in progress, Mr. Childers discovered two wooden crosses wrapped in burlap underneath the house. He asked Garrett why he had them. Garrett replied he was going to burn one in a neighbor's yard, because she was dating a black man. He then stated that probation officers were looking for his son, Terry, because he had violated the terms of his probation. He said, if they picked his son up, he was going to burn the other cross in the police chief's yard, "and if that wouldn't take care of it, something else would."

On June 5, 1989, Clyde David Morton, the York City Chief of Police, returned to his home to find a burned cross lying in his front yard. He reported the incident to the city police and to the State Law Enforcement Division (SLED). The police took the burned cross as evidence that same day. Two days later, police officers visited Garrett's house to question him about the cross burning. After advising him of his *Miranda* rights, the officers told Garrett they had information that there were crosses under his house. Garrett replied that at

one time he had some crosses, but that he had given his last one to a man in Darlington. The officers then asked to look under the house. Garrett gave his consent and, as the officers started toward the back of the house, he stopped them and stated he still had one cross under the house. He then unlocked the door leading under the house and allowed the officers to retrieve the cross. He stated that he had made the cross because he had planned to burn it in the yard of a neighbor, a white woman who was dating a black man. He allowed the officers to take the cross with them.

Later in the investigation, Garrett stated to a SLED agent that he and Johnny Ramsey had made some crosses at the home of Ramsey's son. Garrett stated that he took one of the crosses to burn in his neighbor's yard, but decided not to do it. He denied having any other crosses. He also admitted that Johnny Ramsey had talked with him in early June, 1989, about burning crosses in front of the court house and city hall.

Laboratory analysis revealed that wire from the burned cross and the cross taken from Garrett's house had been cut by the same tool. In addition to the burned cross, the police recovered a partial bootprint in the mud in Chief Morton's yard on the day of the incident. The tread was consistent with boots owned by Johnny Ramsey, thus implicating Ramsey.

At trial, Garrett denied any involvement in burning the cross in Chief Morton's yard. However, he admitted he knew Johnny Ramsey and knew that Ramsey had been associated with the Ku Klux Klan. Garrett also testified that approximately fifteen years earlier he himself had been a member of the Ku Klux Klan for a little over a year. He further testified that the day the cross found under his house was made, there were two crosses made and that he helped Johnny Ramsey make both of them. He also admitted he took one of the crosses home and contemplated burning it in front of his neighbor's house. He admitted that the crosses were made for burning and that there would be no other reason to make them. He also admitted that the reason for burning a cross would be to send a message and agreed the purpose of the whole thing would be to scare or intimidate somebody.

The jury convicted Garrett on the charges of aiding and conspiring with Ramsey to intimidate Chief Morton by means of an incendiary. It acquitted him on the charge of cross burning.

## I.

Garrett excepts to the denial of his pretrial motion to quash the indictment for aiding and conspiring to intimidate by means of an incendiary. The ground for the motion was that the facts of the case made the charge inapplicable.

A motion to quash an indictment addresses only the sufficiency of the indictment, not the sufficiency of the State's evidence. *See State v. Crenshaw,* 274 S.C. 475, 266 S.E. (2d) 61 (1980), *cert. denied,* 449 U.S. 883, 101 S. Ct. 236, 66 L. Ed. (2d) 108 (1980).

> An indictment is adequate if the offense is stated with sufficient certainty and particularity to enable the court to know what judgment to pronounce, the defendant to know what he is called upon to answer, and acquittal or conviction to be placed in bar to any subsequent prosecution.

*Id.* at 477, 266 S.E. (2d) at 62.

Garrett has not claimed, either in the circuit court or in this Court, that the indictment in question is not sufficient on its face. His exception seems to be based on a misunderstanding of the function of a motion to quash. The exception is wholly without merit.

## II.

Garrett next argues the circuit court should have granted his motion for a directed verdict of acquittal on the conspiracy and aiding charges.[1] The statute provides in pertinent part:

> Whoever wilfully and unlawfully communicates a threat . . . concerning an attempt . . . to be made to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of an explosive or incendiary; or aids or agrees with, . . . or conspires with, any person to do or

---

[1] Garrett also argues the circuit court should have granted his post verdict motion for judgment n.o.v. on this same ground. A motion for judgment notwithstanding the verdict is a civil trial motion not available in a criminal trial. *See State v. Miller,* 287 S.C. 280, 337 S.E. (2d) 883 (1985).

cause to be done any of the acts hereinbefore mentioned, shall be guilty of a felony. . . .

S.C. Code Ann. Section 16-11-550 (1976).

Garrett claims the evidence is not sufficient to support his conviction under the statute. The substance of his argument is set forth in his brief:

Construed in the light most favorable to the State, the evidence adduced at trial supported a finding that the cross burned in Police Chief Clyde Morton's yard was built by [Garrett]. The evidence also supported a finding that Morton was intimidated by the burning cross, arguably an incendiary device within the meaning of the statute. The record is utterly devoid, however, of any proof of the predicate act, namely, a prior *threat* insinuating that the cross would be burned.

(Citation omitted; emphasis in original).

Under the statutory language, Garrett was guilty of an offense if he aided or conspired with any person to commit *any* of the acts mentioned in the section. One act mentioned is intimidating an individual by means of an incendiary.

The statute did not require the State to prove, as Garrett suggests, that he personally communicated a threat to burn an incendiary if the police picked up his son.[2] If the State produced evidence that Garrett aided someone else in doing any act described in the statute, the case had to go to the jury. Garrett concedes the evidence shows that he made the cross Johnny Ramsey burned in Chief Morton's yard. In the brief and at oral argument, Garrett's counsel conceded the cross was at least arguably an incendiary. Because the cross was a device adapted or used for setting a fire, we hold it was an incendiary within the meaning of the statute. Garrett himself testified that the purpose for making the cross was to burn it, to send a message, and to intimidate somebody.

---

[2] The evidence shows, however, that Garrett communicated such a threat to Childers. The jury could also have found that the cross burning itself communicated a threat to Chief Morton to injure him or to damage his property by means of an incendiary. *Cf., State v. Miller*, 6 Kan. App. (2d) 432, 629 P. (2d) 748 (1981) (burning a cross may constitute a threat within meaning of terroristic threat statute in light of surrounding circumstances).

In these circumstances, the judge properly denied the motion for a directed verdict of acquittal for insufficiency of evidence. Garrett's exception is without merit.

## III.

Garrett's last argument is that the circuit court should have granted him a new trial because the jury verdicts were inconsistent.[3] However, he has failed to demonstrate any inconsistency.

The jury could have found that Johnny Ramsey placed the burning cross in Chief Morton's yard by himself. They may have believed Garrett's denial that he participated in the cross burning or may have found the State's circumstantial evidence too weak to prove that Garrett was the one who actually burned the cross in Morton's yard.

At the same time, the jury could have consistently found that Garrett aided Ramsey by making the cross and hiding it under his house for Ramsey's use. There was also evidence from which they could have found that Ramsey told Garrett he was going to burn the cross and that Garrett, although he did not plant the burning cross, agreed or conspired with Ramsey to carry out the latter's plan.

On this view of the evidence, it would be consistent for the jury to acquit Garrett of cross burning, but convict him of conspiring with and aiding Ramsey.

Affirmed.

Gardner and Shaw, JJ., concur.

---

[3] We observe in passing that the recent case of *State v. Alexander*, — S.C. —, 401 S.E. (2d) 146 (1991), overturned the rule that the defendant is entitled to a new trial when the jury reaches inconsistent verdicts.