1967

The STATE, Respondent v. Timothy BARKSDALE, Stanley B. Montgomery, William Hall, Charles B. McKinney, Antonio Wakefield, and William M. Thomason, Defendants, of whom Stanley B. Montgomery is Appellant. Appeal of Stanley B. MONTGOMERY. The STATE, Respondent v. Timothy BARKSDALE, Stanley B. Montgomery, William Hall, Charles B. McKinney, Antonio Wakefield, and William M. Thomason, Defendants, of whom Charles B. McKinney is Appellant. Appeal of Charles B. McKINNEY.

(428 S.E. (2d) 498)

Court of Appeals

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Asst. Attys. Gen. Harold M. Coombs, Jr.* and *Alexandria B. Skinner,* Columbia, and *Sol. Joseph J. Watson,* Greenville, *for respondent.*

*Asst. Appellate Defender Robert M. Pachak,* of the *South Carolina Office of Appellate Defense,* Columbia, *James R. Mann,* Greenville, and the *South Carolina Office of Appellate Defense,* Columbia, *for appellants.*

Heard Jan. 18, 1993; Decided March 15, 1993.

Reh. Den. April 13, 1993.

*Per Curiam:*

Stanley B. Montgomery and Charles B. McKinney, the appellants, and four co-defendants were tried jointly for the crimes of lynching in the first degree in the death of James Greggs and lynching in the second degree in the assault on

Fred McAlister. The jury found all defendants innocent of second-degree lynching. Montgomery and McKinney were found guilty of first-degree lynching.[1] Both were sentenced to a term of 35 years imprisonment. We affirm as to both appellants.

Both appellants argue the trial court erred in (1) not directing verdicts to the charge of lynching in the first degree, (2) its instruction on the requisite intent to prove them guilty as members of a mob, and (3) refusing to recharge the jury on the definition of a mob. Additionally, McKinney argues the court erred in (1) charging self-defense, and (2) associating its charge on mutual combat with its charge on self defense.

The appellants were involved in an altercation at a club in Greenville named Dazzlers. Fred McAlister, Gary Blassingame, and the victim, James Greggs, drove to the club together around 1:30 A.M. to meet girls. They parked in a lot near the club and walked to the club. Blassingame went inside the club while McAlister and Greggs stood outside. Meanwhile, the appellants and their co-defendants arrived at the club. Co-defendants Wakefield and Hall engaged in a confrontation with McAlister. Greggs and Darrin Davis intervened and stopped the confrontation.

Having averted this confrontation, McAlister and Greggs decided to leave. Because their car would not start, they stood near it, waiting for Blassingame to exit the club. Although the appellants and their co-defendants started to leave, they decided to return and fight with McAlister and Greggs. All of the defendants except Montgomery began fighting Greggs and McAlister. Blassingame pulled Wakefield and Hall off McAlister, who went to the car and tried to start it again. Meanwhile, Greggs was fighting with Thomason, McKinney, and Barksdale. Somehow Greggs broke free and went to the car where he retrieved a car jack, which he began swinging. Although several of the defendants claimed Greggs struck them with the tire jack, the State's forensic expert found no trace of blood, skin, or hair on the jack.

As McAlister continued to try to start his car, he heard Thomason say, "[c]ome on, come on, I'm going to get him

---

[1] Appellants do not claim inconsistency of the verdicts as a basis for reversal. *But see State v. Alexander,* 303 S.C. 377, 383, 401 S.E. (2d) 146, 150 (1991).

[Greggs]." Thomason grabbed Greggs by the legs and threw him to the ground. As Hall and McKinney prevented McAlister from aiding Greggs, the others, except Montgomery, kicked and struck Greggs with objects; Montgomery picked up a small log and hurled it against the back of Greggs' head. Also, Greggs' head struck a car. As Greggs lay on the ground, Wakefield spat on him and cursed him. Because Greggs was still moving, McKinney kicked him again. The appellants and their co-defendants left in their car. McAlister received several bruises and lacerations.

McAlister recovered from his injuries. Greggs died the next day. The pathologist testified Greggs died from multiple injuries caused by blunt trauma to the head. He had two skull fractures and severe brain damage. His face looked like it had been scrubbed with sandpaper.

## MONTGOMERY'S AND McKINNEY'S APPEAL

The crime of lynching in the first degree is defined in S.C. Code Ann. § 16-3-210 as "[a]ny act of violence inflicted by a mob upon the body of another person which results in the death of the person. . . ." To constitute the crime of lynching, the death must have been inflicted by a mob. A *mob* is defined in § 16-3-230 as the "assemblage of two or more persons, without color or authority of law, for the premeditated purpose and with the premeditated intent of committing an act of violence upon the person of another." In cases of lynching, a mob has been equated to an "unlawful assemblage of persons." *Cantey v. Clarendon County*, 101 S.C. 141, 143, 85 S.E. 228, 229 (1915).

Although lynching is a statutory crime,[2] legal scholars analyzing the closely analogous common law crime of riot have fully explored the degree of intent required to prove crimes involving intentional violence by a group toward the person of another. " 'Mob' has been held to be practically synonymous with 'riot' and 'riotous assembly.' " 58 C.J.S. *Mob* p. 837 (1948); *Black's Law Dictionary* 905 (5th ed. 1979); *see also* S.C. Code Ann. §§ 16-5-10 to -140 ("mob" and "riot" are used interchangeably throughout Chapter 5). Our Supreme Court has defined riot as:

---

[2] We have been unable to locate a case from this jurisdiction which addresses the intent required of the participants in a lynching.

[A] tumultuous disturbance of the peace by three or more persons assembled together of their own authority, with the intent mutually to assist each other against anyone who shall oppose them, and putting their design into execution in a terrific and violent manner, whether the object was lawful or not.

*State v. Albert*, 257 S.C. 131, 134, 184 S.E. (2d) 605, 607 (1971), *cert. denied*, 409 U.S. 966, 93 S.Ct. 278, 34 L.Ed. (2d) 231 (1972).

In riot cases, the state must show evidence of a common intent to do an unlawful act when the statute makes that an element of the crime. *Dixon v. State*, 105 Ga. 787, 31 S.E. 750, 753 (1898). The intent of persons assembled to mutually assist each other may be proven by "positive testimony, or it may be inferred from circumstances." *State v. Cole*, 13 S.C.L. (2 McCord) 117, 120 (1822). The common intent to do violence to the person of another may be formed before or during the assemblage. *Id.* at 123-24; 54 Am. Jur. (2d) *Mobs and Riots* § 8 (1971). Finally, an assemblage lawful in its inception may become unlawful if the group conceives an unlawful purpose which it proceeds to carry out in a riotous manner. *Cole*, 13 S.C.L. at 123-24. ("For if persons who have assembled for a lawful purpose do afterwards associate together to commit an unlawful act, such association will be considered an assembling together for that purpose."); Edward Wise, *The Law Relating to Riots and Unlawful Assemblies* 5 (2d ed. 1848).

The State is required to prove every element of the crime for which an accused is charged. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed. (2d) 560 (1979); *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed. (2d) 368 (1970). Mere suspicion alone is insufficient to send the case to the jury. There must be substantial evidence which reasonably tends to prove the guilt of the accused. *State v. Edwards*, 298 S.C. 272, 275, 379 S.E. (2d) 888, 889 (1989), *cert. denied*, 493 U.S. 895, 110 S.Ct. 246, 107 L.Ed. (2d) 196; *State v. Littlejohn*, 228 S.C. 324, 329, 89 S.E. (2d) 924, 926 (1955).

Both appellants argue the trial court should have directed a verdict of innocent to the charge of lynching because the State failed to present sufficient evidence that they assembled as

part of a mob for the purpose and with the intent of committing an act of violence. They argue that Gary Blassingame, one of the State's key witnesses, perhaps best described the events leading up to this tragic incident when he testified: "it was just a fight, a big fight . . . it started off with one [person fighting Greggs and] progressed."

The State argues that while the evidence may be susceptible of the conclusion that the appellants and their co-defendants assembled for a lawful purpose, the purposeful element of mob conduct may be proven by circumstantial evidence which shows the transformation of the group's intent from that of a lawful purpose to the unlawful purpose to commit an act of violence. They argue that this transformation is evidenced by the fact the appellants and their co-defendants returned to the club with the expressed purpose and intent to commit an act of violence upon the victim.

In considering the motion for directed verdict, this court is concerned only with the existence of evidence and not its weight. *State v. Butler*, 277 S.C. 452, 457, 290 S.E. (2d) 1, 4 (1982), *cert. denied*, 459 U.S. 932, 103 S.Ct. 242, 74 L.Ed. (2d) 191. Additionally, the evidence must be viewed in the light most favorable to the State. Any evidence, whether direct or circumstantial, reasonably tending to prove the guilt of the accused creates a jury issue. *Id.* We hold that the evidence viewed in the light most favorable to the State tends to show the requisite intent.

Appellants also argue the trial court erred in failing to instruct the jury that "the premeditated purpose and premeditated intent which was required was not that of merely doing an act of violence, but the assemblage itself had to be for the premeditated purpose and with the premeditated intent of committing an act of violence upon the person of another."

The appellants argue that while the court properly instructed the jury on the definition of a mob under S.C. Code Ann. § 16-3-230, it emphasized the doing of an act of violence rather than the intent of the assemblage. They claim the refusal of the court to correct this erroneous impression in the minds of the jurors violates Article V, § 21 of the Constitution of South Carolina, which requires the court to instruct the

jury on the law. They rely on the cases of *Coney v. State,* 113 Ga. 1060, 39 S.E. 425, 426 (1901), and *Loomis v. State,* 78 Ga. App. 336, 51 S.E. (2d) 33, 44 (1948).

Jury instructions must be considered as a whole and if as a whole they are reasonably free from error, isolated portions which might be misleading do not constitute reversible error. *State v. Jackson,* 297 S.C. 523, 526, 377 S.E. (2d) 570, 572 (1989). We have reviewed the charge as a whole and hold it was adequate.

Having concluded previously that to constitute a mob under the statute the assemblage need not have formed with the premeditated purpose and intent of committing an act of violence upon the person of another, but the requisite purpose and intent may be formed after the participants are assembled, we find no merit to this argument.

The appellants also assert the trial court erred when it refused to recharge the jury with the definition of a mob after the jury requested the court to recharge them on the definitions of first-degree lynching and self-defense. They claim that the definition of mob was essential to understanding the definition of lynching.

After the trial court charged the jury and it began deliberations, the jury requested a recharge on lynching and self-defense. The court recharged the statutory definition of lynching and asked the jury if it needed to be read the statutory definition of a mob. The jury replied in the negative. Appellants claim the failure to recharge the definition of a mob placed emphasis on the act of violence without emphasizing that the act had to by done by an assemblage with the premeditated purpose and premeditated intent of committing the act.

We find no error on the court's refusal to recharge the definition of mob. When a jury requests an additional charge, it is sufficient for the court to charge only those matters necessary to answer the jury's request. *Corbin v. Prioleau,* 260 S.C. 171, 175, 194 S.E. (2d) 875, 876 (1973); *Rauch v. Zayas,* 284 S.C. 594, 597, 327 S.E. (2d) 377, 378 (Ct. App. 1985).

## McKINNEY'S APPEAL

Appellant McKinney also argues error in the court's self-defense charge because it did not adequately inform the jury that any reasonable doubt as to whether the defense had been

established should be resolved in his favor.

A charge is sufficient if, as a whole, it covers the law applicable to the case. *State v. Burton,* 302 S.C. 494, 498, 397 S.E. (2d) 90, 92 (1990). A plea of self-defense is not available to one who engages in mutual combat. *State v. Porter,* 269 S.C. 618, 622, 239 S.E. (2d) 641, 643 (1977).

The jury requested a recharge on the elements of self-defense. The court recharged the elements. McKinney's counsel then requested the court charge the jury that any doubt be resolved in favor of him. The court refused because it had already charged the jury on reasonable doubt.[3] The judge also stated that he was only going to recharge the law requested by the jury.

The State notes that McKinney did not object to the original charge on self-defense but merely requested the recharge be expanded to include the asserted explanation. We hold the overall charge on self-defense was adequate. Moreover, the trial judge answered the jury's inquiry in his recharge.

McKinney also asserts the court erred in associating its charge on mutual combat with its charge on self-defense because mutual combat is a complete defense to the crime of lynching.

If McKinney made a specific request to charge on this issue, it does not appear in the record. We find no objection to the charge based on the grounds now asserted. It is difficult for us to ascertain what this appellant would have had the court charge. He may not now base error on an omission in the charge when he failed to request an instruction which would have dealt with the proposition now asserted. *State v. Jamison,* 221 S.C. 312, 321, 70 S.E. (2d) 342, 345 (1952). In any event, we do not discern the infirmity in the charge claimed by this appellant.

Accordingly, the order of the trial court is

Affirmed.

---

[3] The court charged: "if from the evidence in this case you have a reasonable doubt as to whether or not these defendants are guilty as charged in these indictments, it would be your duty to acquit them."