2438

The STATE, Respondent v. Elwaldo Ronaldo JAMES a/k/a Donald Mitchell, Appellant.

(472 S.E. (2d) 38)

Court of Appeals

---

[2] In light of our disposition, we decline to address Appellants' remaining issues on appeal.

*Assistant Appellate Defender Robert M. Pachak* of the *South Carolina Office of Appellate Defense* of Columbia, *for appellant.*

*Attorney General Charles Molony Condon, Chief Deputy Attorney General Charles W. Gambrell, Jr.,* and *Assistant Attorney General Chris Gantt Hoffman,* Columbia, *for respondent.*

Submitted Apr. 22, 1996.

Decided Apr. 22, 1996; Reh. Den. June 21, 1996.

## ORDER

*Per Curiam:*

After a careful consideration of the State's petition for rehearing, the same is granted but without oral argument. It is ordered that the opinion heretofore filed, Opinion No. 2438, filed December 28, 1995, is withdrawn and the attached opinion is substituted.

IT IS SO ORDERED.

/s/ Jasper M. Cureton, J.
/s/ C. Tolbert Goolsby, Jr., J.
/s/ Kaye G. Hearn, J.

CURETON, Judge:

Appellant, Elwaldo Ronaldo James, a/k/a Donald Mitchell, a/k/a Kojak, was indicted along with several others by the State Grand Jury for conspiracy to traffick in 100 grams or more of crack cocaine in the counties of York, Union, and Chester and the State of North Carolina from on or about January 1989 until December 1992 in violation of S.C. Code Ann. § 44-53-375(C) (Supp. 1995). James and eight co-defendants

were tried jointly.[1] The trial judge directed verdicts of acquittal as to seven of the co-defendants; the jury convicted James and Frank Feemster. James raises two issues on appeal. First, he argues the trial court erred in refusing to quash the indictment and superseding indictment because they were returned by grand jurors who were paid by checks issued from the Attorney General's office. He next claims he was entitled to a directed verdict on the conspiracy charge because the State presented no evidence he was part of a multicounty trafficking conspiracy during the time alleged in the indictment. We affirm.

## I.

James first contends the trial court erred in refusing to quash the indictment because the grand jurors who returned the indictments were paid by checks issued from the State Attorney General's office. James argues this procedure "violates the public policy of maintaining the secret and non-adversarial nature of grand jury proceedings." We find no reversible error.

In *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), the United States Supreme Court declared that an indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial the charge on the merits. An indictment is adequate and valid on its face if the offense is stated with sufficient certainty and particularity to enable the court to know what judgment to pronounce, the defendant to know what he is called upon to answer, and acquittal or conviction to be placed in bar to any subsequent prosecution. *See State v. McIntire*, 221 S.C. 504, 71 S.E. (2d) 410 (1952) (an indictment is valid on its face if it contains the necessary elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet); *see also State v. Garrett*, 305 S.C. 203, 406 S.E. (2d) 910 (Ct. App. 1991). The indictment in this case is valid on its face because it contains all

---

[1] The State's theory placed James at the "hub" of the alleged conspiracy. The indictment alleged that he conspired with Frank Feemster, Harry Anthony, Michelle Bayles, Michael Ray Carter, James Gunning, Lou Gunning, Bernard Passmore, Newton Shearer, Freddie Smith, Christopher Bratten, Billy Neal, John Sharpe, and others both known and unknown to the State Grand Jury. At trial, Bratten, Neal, and Sharpe testified for the State; Shearer was a fugitive, having failed to appeal for the trial.

the necessary elements of the offenses intended to be charged, states the date of the offenses, and the name of the accused.

James does not argue the indictment was insufficient on its face. Rather, he claims irregularity in the proceedings by which the indictment was procured. Specifically, he claims the grand jurors were biased in favor of the State because they were on the Attorney General's payroll. Absent evidence to the contrary, however, the regularity and legality of proceedings before a grand jury is presumed. *Cf. Weathers v. State*, — S.C. —, 459 S.E. (2d) 838 (1995) (regularity of proceedings in general sessions court is presumed); *see also State v. Thompson*, 305 S.C. 496, 409 S.E. (2d) 420 (Ct. App. 1991) (proceedings before the Grand Jury are presumed to be regular unless there is clear evidence to the contrary). Thus, if the record does not reveal any irregularity in the proceedings affecting the indictment, this court must presume the trial court had subject matter jurisdiction.

James presents no evidence, much less any clear evidence, supporting his claim that the proceedings before the State Grand Jury were irregular or tainted, or that the grand jurors issuing the indictment were biased in favor of the State because their checks were issued through the Attorney General's office. James's assertion, standing alone, is not sufficient to overcome the presumption of regularity and legality attending the proceedings before the Grand Jury, and simply based on that assertion, we cannot assume the State abused the grand jury process in order to obtain a finding of probable cause to prosecute. "Speculation about 'potential' abuse of grand jury proceedings cannot substitute for evidence of *actual* abuse as grounds for quashing an otherwise lawful indictment." *Thompson*, 305 S.C. at 502, 409 S.E. (2d) at 424.

Moreover, among the statutes promulgating the State Grand Jury, S.C. Code Ann. § 14-7-1660 (Supp. 1995) provides that "[j]urors of a state grand jury shall receive a daily subsistence expense. . . ." and S.C. Code Ann. § 14-7-1780 (Supp. 1995) provides that "[t]he other costs associated with the state grand jury system, including juror per diem, mileage, and subsistence must be paid from funds appropriated to the Attorney General's office for this purpose by the General Assembly in the annual general appropriations act." Thus, section 14-7-1780 specifically states that the state grand jurors must be paid from sums appropriated to the Attorney Gen-

eral's office. The State simply issued the checks in the manner prescribed by the Legislature. Furthermore, the grand jurors' subsistence checks were delivered to them by the Clerk of the Grand Jury, not by any of the prosecutors or their staff. Accordingly, there was no error in the trial court's refusal to quash the indictment and dismiss the case for lack of subject matter jurisdiction.[2]

## II.

James next argues the trial court erred in refusing to grant him a directed verdict on the charge of conspiracy to traffick in crack cocaine because the State failed to present any substantial evidence beyond a reasonable doubt that he was part of an agreement with a shared criminal objective to traffick in crack cocaine in York, Union, and Chester counties during the period alleged in the indictment. For the reasons discussed below, we find no error in the trial court's refusal to grant a directed verdict.

In ruling on a motion for a directed verdict, the trial court is concerned with the existence or nonexistence of evidence, not its weight. *State v. Bryant*, — S.C. —, 447 S.E. (2d) 852 (1994); *State v. Morgan*, 282 S.C. 409, 319 S.E. (2d) 335 (1984). The motion should be granted if the evidence merely raises a suspicion of the defendant's guilt, or is such to permit the jury to merely conjecture or speculate as to the accused's guilt. *State v. Brown*, 267 S.C. 311, 227 S.C. (2d) 674 (1976); *State v. Barksdale*, 311 S.C. 210, 428 S.E. (2d) 498 (Ct. App. 1993). However, if the State presents any substantial evidence, either direct or circumstantial, which reasonably tends to prove the guilt of the defendant or from which the defendant's guilt may be fairly and logically deduced, the case must go to the jury. *State v. Prince*, — S.C. —, 447 S.E. (2d) 177 (1993); *State v. Poindexter*, 314 S.C. 490, 431 S.E. (2d) 254 (1993). On appeal from the denial of a motion for directed verdict, this court must view the evidence in the light most favorable to the State. *Prince*, — S.C. —, 447 S.E. (2d) 177; *State v. Schrock*, 283 S.C. 129, 322 S.E. (2d) 450 (1984).

---

[2] The record reveals the practice of paying state grand jurors by checks issued from the South Carolina Attorney General's office has been stopped, and state grand jurors are not being paid by checks issued through the county clerk of court. We agree this is the better practice.

This case originated out of the State Grand Jury. Pursuant to S.C. Code Ann. § 14-7-1630(A)(1) (Supp. 1995), the subject matter jurisdiction of the State Grand Jury is limited to offenses and conspiracies to commit offenses which "are of a multi-county nature or have transpired or are transpiring or have significance in more than one county of this State." Recently, our Supreme Court has interpreted this jurisdictional mandate to require only that an otherwise valid indictment contain an allegation of multicounty significance in order to vest jurisdiction in the State Grand Jury. *State v. Evans*, — S.C. —, 470 S.E. (2d) 97 (1996). Moreover, the *Evans* court held that once jurisdiction vests in the State Grand Jury, the State need not prove multicounty impact at trial unless multicounty impact is actually an element of the offense charged. *Id.*

The indictment in this case alleged, among other things:

## COUNT ONE

### TRAFFICKING IN CRACK COCAINE

S.C. Code Ann. Section 44-53-375(C)

That ELWALDO RONALDO JAMES . . . and other persons both known and unknown to the State Grand Jury, did in York, Union, and Chester counties and the State of North Carolina, from on or about January 1989 until December 1992, knowingly conspire to sell, manufacture, deliver, purchase, bring into this State, or provide financial assistance or did otherwise aid, abet, or attempt to sell, manufacture, deliver, purchase, or bring into this State one hundred grams or more of crack cocaine, a Schedule II controlled substance . . . such conduct not having been authorized by law.

Hence, the indictment alleged multicounty significance, and charged James with two activities which amount to trafficking in crack cocaine under § 44-53-375(C): (1) conspiracy to sell, manufacture, deliver, purchase, or bringing into this State more than one hundred grams of crack cocaine; and (2) providing financial assistance or otherwise aiding, abetting, or attempting to sell, manufacture, deliver, purchase, or bring into this State one hundred grams or more of crack cocaine. The State argued to the jury, however, that its entire case was about conspiracy. Therefore, and in light of the Supreme

Court's holding in *Evans*, this court is only concerned with whether, viewing the evidence most favorably for the State, there is any substantial evidence which reasonably tends to prove James guilty of conspiring to traffick in crack cocaine, whether or not such trafficking had multicounty impact.

The record contains evidence from which the jury could have found that James engaged in a conspiracy to traffick in crack cocaine, although the evidence only established such a conspiracy in 1992, and only affected York County. Pamela Neeley testified she made several purchases of crack cocaine from James in York County through Frank Feemster who introduced her to James. Neeley indicated James was Feemster's supplier. She further testified, however, that all her purchases from James and Feemster occurred in 1992. Kernell Austin testified he bought crack cocaine from Feemster around November or December of 1992 in York County. Larry Wilmore testified he bought crack cocaine from Feemster on three occasions in June or July of 1992 in York County. Billy Neal testified that he also purchased crack from Feemster on two occasions in York County, and that in October 1992, at Feemster's request, he began watching the door at the crack house from where Feemster operated. Christopher Bratton testified he sold drugs at a club called Clyde's, and got his supply from Freddie Smith. This began in September or October of 1992 and was in York County. He also testified he bought drugs from Feemster sometime in the past. John Sharpe testified he started buying drugs from Feemster in March or April of 1992 in York County. He further testified Feemster told him James was his supplier. In fact, Sharpe twice approached James intending to purchase crack cocaine, but James referred him to Feemster for the purchases. Sharpe stated he sold his drugs in York County. Melvin Stuart testified he bought crack cocaine for his own use, and started buying it from Sharp in March or April of 1992, and from Feemster from March to June of 1992. Stuart also testified he purchased crack cocaine from James once in York County because Feemster was not around. Stuart testified that Feemster told him he received his crack cocaine from James. Shailesh Patel, who owns the York Colonial Motor Inn, testified James often rented more than one room at the Inn, and Feemster sometimes accompanied James.

This evidence, viewed most favorably for the State, is substantial evidence which reasonably tends to prove James guilty of conspiracy to traffick in crack cocaine in York County in 1992. We are aware that proof of a buyer-seller relationship, without more, is inadequate to tie a defendant to a larger conspiracy, as is mere association with members of the conspiracy, because guilt remains individual and personal and is not a matter of mass application. *State v. Gunn*, 313 S.C. 124, 437 S.E. (2d) 75 (1993), *cert. denied, Childers v. South Carolina*, — U.S.—, 114 S.Ct. 1063, 127 L.Ed. (2d) 383 (1994). However, an agreement to distribute drugs can sometimes rationally be inferred from frequent contacts among the defendants and from their joint appearances at transactions and negotiations. *State v. Gunn*, 313 S.C. 124, 437 S.E. (2d) 75. What is required for an agreement is a shared, single criminal objective, not just similar or parallel objectives between similarly situated people. *State v. Barroso*, — S.C. —, 462 S.E. (2d) 862 (Ct. App. 1995). It is not enough that a group of people separately intend to distribute drugs in a single area, nor enough that their activities occasionally or sporadically place them in contact with each other. *Id.* at —, 462 S.E. (2d) at 868. People in the same industry in the same locale (even competitors) can occasionally be expected to interact with each other without thereby becoming conspirators. *Id.* What is needed is proof they intended to act together for their shared mutual benefit within the scope of the conspiracy charged. *Id.*

In this case, there is an abundance of evidence of frequent contact between Feemster and James and their joint appearances at transactions and negotiations. Testimony from Neeley, Sharpe, Stuart, and Patel provides reasonable proof that James and Feemster acted together for their shared mutual benefit during 1992 in York County.

Viewed in light of the Supreme Court's holding in *Evans*, the fact that the evidence fails to establish that James and Feemster also acted together for their shared mutual benefit in Chester and Union counties during the time set forth in the indictment is of no consequence. In South Carolina, "[i]t is a rule of universal observance in administering the criminal law that a defendant must be convicted, if at all, of the particular offense charged in the bill of indictment." *Gunn*, 437 S.E. (2d) at 82; *State v. Cody*, 180 S.C.

417, 186 S.E. 165 (1936). A material variance between charge and proof entitles the defendant to a directed verdict of acquittal. *Gunn*, 437 S.E. (2d) at 82. A variance is not material if it "is not an element of the offense." *Id.* A variance between an allegation of the indictment and the proof is immaterial if the unproved allegation is surplusage. *Evans*, — S.C. —, 470 S.E. (2d) 97. Moreover, a conviction will not be overturned due to evidence that tends to show a narrower charge than that contained in the indictment if the narrower charge is fully included within the indictment. *Evans*, — S.C. —, 470 S.E. (2d) 97. Here, the variance between the conspiracy charged and the conspiracy proven does not constitute a material variance because multicounty impact is not a necessary element of conspiracy to traffick crack cocaine. *Evans*, — S.C. —, 470 S.E. (2d) 97 (the allegation of multicounty significance contained in an indictment "was simply a jurisdictional statement for the purposes of the State Grand Jury" and "had nothing to do with the elements of the offense of trafficking to be proved in circuit court."). In addition, the indictment fully included the "narrower charge" that James was involved in a conspiracy to traffick in crack cocaine in York County.

We conclude the State presented sufficient evidence to establish a conspiracy in York County in 1992 between James and Feemster. Accordingly, we hold the trial court did not err in failing to direct a verdict of acquittal for James.

Affirmed.

GOOLSBY and HEARN, JJ., concur.