2270

The STATE, Respondent v. Tyrone JENKINS, Appellant.

(452 S.E. (2d) 612)

Court of Appeals

*Asst. Appellate Defender M. Anne Pearce* of *SC Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Sr. Asst. Atty. Gen. Harold M. Coombs, Jr.,* and *Asst. Atty. Gen. William Edgar Salter, III,* Columbia; and *Sol. Randolph Murdaugh, III,* Hampton, *for respondent.*

Heard Oct. 6, 1994.

Decided Dec. 12, 1994; Reh. Den. Jan. 26, 1995.

SHAW, Judge:

Appellant Tyrone Jenkins was convicted of burglary in the first degree and was sentenced to 15 years imprisonment. Appellant appeals on the grounds the trial court deprived him of a fair trial by admitting into evidence an oral statement which appellant made to police while under custodial arrest. We affirm.

Pam and Samuel Dinger, residents of Hilton Head Island, retired to bed at approximately 11:30 p.m. on May 4, 1992. Between the hours of 2:00 a.m. and 3:00 a.m. Mrs. Dinger awoke and noticed the kitchen was in disarray and that the laundry room door was ajar. Attributing the disarray and the open door to Mr. Dinger's activities, Mrs. Dinger closed the open door and returned to bed. The next morning the door again stood open, a window screen in the laundry room had been ripped out, the window was open and several valuables were missing from the house. Mr. Dinger also found that the poolside phone had been taken off the hook. Upon investigating further, Mr. Dinger found a discarded Gatorade bottle and a discarded beer bottle in his yard. These items had been removed from the Dingers' outdoor poolside refrigerator. The beer bottle was found in the shrubbery near the laundry room window. Appellant's fingerprints were recovered from both the Gatorade bottle and the beer bottle.

On May 8, 1992, appellant was arrested and questioned in connection with the Dinger burglary. Detective Gobel, with the Beaufort County Sheriff's Department, testified he questioned appellant about this burglary and some other burglaries he was investigating. He stated as follows:

> I was investigating a series of burglaries in which Mr. Jenkins was a suspect. . . . [He] told me that he hadn't done any of the burglaries. He said that based on his prior experience of doing burglaries . . . he had set up, basically, a school of burglary. He said that he had taken in some friends, acquaintances. He refused to name those people to me. He told me that he had taught them, based on his experience, how to commit burglaries and get away with it.

\*     \*     \*     \*     \*     \*

[A]fter he set up his school of burglary, that his students would actually go out and commit the burglaries. He contended that he didn't commit them, that he was the businessman. That once the students had stolen the property, they would then return this property to him. In his own words, "I would take care of business." He still held the contention that he did not personally do any and that he was just basically the business manager in the operation.

Over appellant's objection, this evidence was admitted to show a common scheme or plan. The trial judge thereupon gave the jury a limiting instruction on the use of the evidence.

Following the officer's testimony, appellant testified in his own defense. Appellant denied having told the officer that he ran a school of burglary. He also denied having burglarized the Dingers' home although he admitted to being on their property on the night in question. On direct examination, appellant explained that he and one of his associates went to the Dingers' home on the night of the burglary to steal a car. Appellant claimed that upon arriving at the Dingers', his associate checked the backyard for a car while appellant remained in the front yard but neither could find a car on the premises. In reference to his fingerprints being found on the bottles, appellant claimed that when his associate returned to the front yard he brought the beer and Gatorade and appellant drank from both bottles. Appellant contends that at that point his associate suggested burglarizing the Dingers' home but he refused and left the property still in search of a car to steal. According to the appellant, his associate was still on the Dinger property when he left.

The only issue on appeal is whether the trial judge erred in admitting evidence of other bad acts or crimes. Appellant asserts Detective Gobel's testimony regarding his alleged oral statement should have been excluded under *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923). We disagree.

Generally, a statement in the nature of an admission or confession, in order to be admissible, must relate to the offense in question. In the prosecution of one crime, proof of another direct substantive crime is never admissible

unless there is some legal connection between the two upon which it can be said that one tends to establish the other or some essential fact in issue. *State v. Gamble*, 247 S.C. 214, 146 S.E. (2d) 709 (1966). The State must also show the evidence sought to be introduced fits into one of the *Lyle* exceptions. *State v. Bell*, 302 S.C. 18, 393 S.E. (2d) 364, *cert. denied*, 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed. (2d) 182 (1990).

Under *Lyle*, our Supreme Court held that evidence of other crimes is generally inadmissible to prove the bad character of the accused to show he acted in conformity therewith. However, such evidence is competent to show the specific crime charged when it tends to establish (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; or (5) the identity of the person charged with the commission of the crime on trial. *State v. Lyle*, 118 S.E. at 807. The test for determining the admissibility of another crime is its logical relevancy to the particular purpose for which it is sought to be introduced. If it is logically pertinent because it reasonably tends to prove a material act, it is not rejected merely because it incidentally proves the defendant guilty of another crime. *State v. Griffin*, 277 S.C. 193, 285 S.E. (2d) 631 (1981).

The State sought to introduce the evidence for the purpose of showing a common scheme or plan. Evidence of a common scheme or plan is admissible if it embraces two or more crimes so related to each other that proof of one tends to establish the others. *State v. Hallman*, 298 S.C. 172, 379 S.E. (2d) 115 (1989). The existence of a design or plan to act in a certain way has probative value to show how one in fact did act and, although plans are not always carried out, one who plans to act in a certain way is more likely to act in that way because of the existence of the plan. *State v. Anderson*, 253 S.C. 168, 169 S.E. (2d) 706, *cert. denied*, 396 U.S. 948, 90 S.Ct. 386, 24 L.Ed. (2d) 253 (1969). The test for determining admissibility of evidence to show a common plan or scheme is whether the particular evidence tends to show the existence, nature or content of the plan. The question becomes whether the particular conduct circum-

stantially tends to prove the design or plan. *State v. Bell,* 393 S.E. (2d) at 370 citing *State v. Anderson,* 169 S.E. (2d) at 712.

We conclude the appellant's admission was related to the burglary in question and that the trial judge properly admitted the evidence as evidence of a larger scheme or plan of which the crime on trial was a part. Accordingly, appellant's conviction is

Affirmed.

HOWELL, C.J., and HOWARD, Acting Judge, concur.