## 2357

The STATE, Respondent v. Juan Adriano BARROSO, a/k/a "Juan Juan," Kenneth D. Jefferson, David Ray Matthews, Michael A. Poston, Grier Carter Copeland, James Alfred Hudson, a/k/a "Bimbo," Dennis M. Jefferson, John E. Watford, Jr., Herman McClain, Henry Christopher Grady, Ronald Mackey Amerson, Ronnie Ellison Moody, Derrick Randy Lloyd, James Michael Hill, James Napoleon Smith, William Van Jefferson, Bobby Bell, Garris Edwin Amerson, Ronald Thomas Rogers, Tommy L. McElveen, Freddie Stevens, Jr., Gene Edward Taylor, of whom David Ray Matthews, Michael A. Poston, John E. Watford, Jr., James Michael Hill, James Napoleon Smith, Bobby Bell and Tommy L. McElveen, Appellants.

(462 S.E. (2d) 862)

Court of Appeals

2

6

*Chief Atty. Daniel T. Stacey, Asst. Appellate Defenders Robert M. Pachak, Robert M. Dudek,* and *M. Anne Pearce, South Carolina Office of Appellate Defense,* Columbia; *J. Alex Stanton, IV;* and *Edward E. Saleeby, Jr.,* Hartsville, *for appellant.*

*David Ray Matthews,* Ridgeville, *pro se.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Charles W. Gambrell, Jr.,* and *Asst. Atty. Gen. Chris Gantt Hoffman,* Columbia, *for respondent.*

Heard Mar. 10, 1995.

Decided June 12, 1995; Reh. Den. Oct. 25, 1995.

SHAW, Judge:

In December 1990, the Statewide Grand Jury indicted 22 individuals, among them Appellants David Ray Matthews, John E. Watford, James Michael Hill, Bobby Bell, James Napoleon

Smith, Michael Poston, and Tommy McElveen, for trafficking in cocaine in excess of 400 grams, in violation of S.C. Code Ann. § 44-53-370(e)(2)(e) (Supp. 1993). The State tried together the defendants who did not plead guilty, and the seven individuals named above were convicted.[1] The seven Appellants appeal various aspects of their trial. We affirm the convictions of Matthews, Watford, Hill, Bell, Poston, and McElveen and reverse the conviction of Smith.

This case involves a massive drug trafficking conspiracy. These Appellants, along with fifteen other individuals, were indicted for violating S.C. Code Ann. § 44-53-370(e)(2)(e) (Supp. 1993) in knowingly selling, delivering, or bringing into South Carolina, or in providing financial assistance or otherwise aiding, abetting, or conspiring to sell, deliver or bring into this State or knowingly being in actual or constructive possession of 400 grams or more of cocaine. The indictment alleged the trafficking occurred in Florence, Darlington and Lee counties as well as the State of Florida from June 1, 1988 through October 31, 1990. There was abundant testimony the members of the conspiracy imported and distributed over 20 kilograms of

---

[1] We note the Supreme Court's admonition in *State v. Gunn*, 313 S.C. 124, 437 S.E. (2d) 75 (1993), reminding prosecutors of the pitfalls inherent in mass conspiracy trials. The Court stated:

> More than forty years ago this Court stated, "It is always cumbersome to try a great number of defendants at one time. . . . With such a large number [of defendants] there might be a danger of some of them being lost sight of by the jury, and their case considered by the jury in a vague way."

*Id.*, 437 S.E. (2d) at 83 (citation omitted). The Court also noted it had the luxury of careful reflection over the record, a luxury the trial court and the jury did not have. The Court stated that separate indictments, with separate trials, and a sharper focus on the alleged conspirators' agreement, would have aided in the refinement of the State's case.

We, too, have searchingly reviewed the voluminous record generated by this trial, and have been able to reflect upon the numerous issues raised. We feel the advice given by the Supreme Court in Gunn applies with equal force to this case. As the Supreme Court stated, individual trials may be inconvenient for the prosecution,

> [b]ut our Government is not one of mere conveniences or efficiency. It too has a stake, with every citizen, in [each defendant] being afforded our historic individual protections, including those surrounding criminal trials. About them we dare not become careless or complacent when that fashion has become rampant over the earth.

*Id.*, 437 S.E. (2d) at 83 (citation omitted).

cocaine in South Carolina over a seventeenmonth period. Eleven of the 22 individuals indicted pled guilty, seven were convicted of trafficking in 400 grams or more of cocaine, two were convicted of lesser charges and two were found not guilty.

## I. SUFFICIENCY OF THE EVIDENCE TO CONVICT

Appellants Smith, Bell, and McElveen contend the trial judge erred in failing to direct a verdict on the change of trafficking in 400 grams or more of cocaine. They assert the evidence failed to show possession of 400 or more grams of cocaine and further failed to show participation in a conspiracy to traffic in that amount.

In ruling on a motion of a directed verdict, the trial judge is concerned with the existence of evidence. *State v. Bryant,* 316 S.C. 216, 447 S.E. (2d) 852 (1994). The trial court must view the evidence in the light most favorable to the State, and should submit the case to the jury if there is any substantial evidence which reasonably tends to prove the guilt of the accused or from which guilt may be fairly and logically deduced. *State v. Prince,* 316 S.C. 57, 447 S.E. (2d) 177 (1993).

A conspiracy is a combination or agreement between 2 or more persons for the purpose of accomplishing a criminal or unlawful object, or achieving by criminal or unlawful means an object that is is neither criminal nor unlawful. *State v. Wilson,* 315 S.C. 289, 433 S.E. (2d) 864 (1993). It may be proven by the specific overt acts done in furtherance of the conspiracy, but the crime is the agreement. Conspiracy is an ongoing or continuing crime. *Id.* The substantive crimes committed in furtherance of the conspiracy constitute circumstantial evidence of the existence of the conspiracy, its object, and scope. *Id.* Although under South Carolina law, a conspiracy does not require overt acts, where there is evidence of overt acts done in furtherance of the conspiracy, an inference may be drawn as to the existence and object of the conspiracy. *Id.*

The government need not show direct contact or explicit agreement between the defendants. It is sufficient to show that each defendant knew or had reason to know of the scope of the conspiracy and that each defendant had reason to believe his own benefits were dependent

upon the success of the entire venture. *United States v. Kenny*, 645 F. (2d) 1323 (9th Cir. 1981), *cert denied*, 452 U.S. 920, 101 S.Ct. 3059, 69 L.E. (2d) 425 (1981). Once the existence of a conspiracy has been established, evidence of only a slight connection is necessary to convict a defendant of knowing participation in it. *Id.* The word "slight" properly modifies "connection," not "evidence." It is tied to that which is proved, not to the type of evidence or the burden of proof. *United States v. Dunn*, 564 F. (2d) 348, 357 (9th Cir. 1977).

The gravamen of the offense of conspiracy is the agreement or combination. *State v. Gunn*, 313 S.C. 124, 437 S.E. (2d) 75 (1993). It is not enough that a group of people separately intend to distribute drugs in a single area, nor enough that their activities occasionally or sporadically place them in contact with each other. What is needed is proof they intended to act *together* for their *shared mutual benefit* within the scope of the conspiracy charged. *Id.* (quoting from *United States v. Evans*, 970 F. (2d) 663 (10th Cir. 1992)). In reviewing the sufficiency of the evidence, we must exercise caution to ensure the proof sufficient for conviction is not obtained by piling inference upon inference. *Id.* Proof of a buyer-seller relationship, without more, is inadequate to tie the buyer to a larger conspiracy, as is mere association with members of the conspiracy. An agreement to distribute drugs, however, can sometimes rationally be inferred from frequent contacts among the defendants and from their joint appearances at transactions and negotiations. *Id.*

As to appellant McElveen, the evidence shows, starting in October of 1989, he made a series of cocaine purchases from admitted co-conspirator Dennis Jefferson. At the first meeting between McElveen and Dennis Jefferson, McElveen purchased 5 ounces of cocaine. One to two weeks later, he purchased 5 more ounces. Approximately two weeks later, he purchased 4 more ounces. These purchases occurred over a six-week period in October and November 1989. In December, 1989, he purchased about 4 to 5 more ounces.

McElveen contends, at most, the evidence shows he possessed 5 ounces of cocaine at any one time. He argues the transactions were separate and distinct and there was no evidence he was a member of the conspiracy. We disagree.

The record evinces a series of transactions between

McElveen and an admitted co-conspirator of this cocaine ring during the time frame and within the scope of the conspiracy alleged. The evidence shows McElveen purchased a minimum of 18 ounces, or 510.3 grams, from October to December, 1989.[2] Thus, there clearly is evidence McElveen was guilty of trafficking in over 400 grams of cocaine based on his possession of over 510 grams during the two-month period. Further, the several individual purchases of cocaine, from the same admitted co-conspirator, on a regular basis, totalling over 400 grams, is sufficient evidence from which the jury could convict McElveen of conspiracy to traffic in 400 grams or more of cocaine. The jury could infer an agreement to distribute drugs from the frequent transactions between McElveen and the admitted co-conspirator. Further, the fact that McElveen purchased in excess of 400 grams from Jefferson in a short period of time evinces McElveen's knowledge of the scope of the conspiracy.

We find no merit to McElveen's argument the transactions were separate and distinct such that, at most, the evidence showed he possessed 5 ounces, or 141,75 grams of cocaine, and evidence of the total amount could not be used to show a conspiracy to traffic in 400 grams or more. Under *State v. Wilson*, — S.C. —, 433 S.E. (2d) 864 (1993), our Supreme Court found no error in using evidence of the amount of drugs involved in various transactions as proof of the scope of a conspiracy for purposes of establishing the elements of the crime of conspiring to traffic under S.C. Code Ann. § 44-53-370(e)(1) and (2) (Supp. 1992). Accordingly, we find the evidence of several purchases from the same admitted co-conspirator over a short period of time, totalling over 400 grams, during the time period of the alleged conspiracy is proof of the scope of the conspiracy for purposes of establishing the crime of trafficking in over 400 grams of cocaine under S.C. Code Ann. § 44-53-370(e)(2)(e) (Supp. 1993).

As to appellant Bell, the evidence similarly reveals a series of cocaine purchases from admitted co-conspirator, Dennis

---

[2] Through consent of all parties, the court introduced an exhibit showing the breakdown of weights based on the metric and the U.S. system. The court instructed the jury, based on this exhibit, that "1 ounce equals 28.35 grams, 1 ounce equals 437.5 grains, 1 pound equals 16 ounces, 1 kilogram, kilo is 2.2046 pounds, 1 kilo, or kilogram, is equal to 1000 grams, . . . 35.273369 ounces is equal to 1000 grams."

Jefferson. Beginning in September or 1989, Bell purchased ½ ounces of cocaine from Jefferson and, thereafter, he purchased 3 to 4 ounces a week for a period of 5 to 6 weeks in October 1989. Therefore, at a minimum, Bell purchased 15.5 ounces, or 439,425 grams, of cocaine from Jefferson between September and November, 1989. Accordingly, the evidence shows Bell had possession of over 400 grams of cocaine during a two-month period. Further, as with McElveen, the jury could infer an agreement to distribute drugs based on evidence of Bell's purchase of over 400 grams of cocaine from the same admitted co-conspirator over a short period of time. We likewise find, under *State v. Wilson*, 315 S.C. 289, 433 S.E. (2d) 864 (1993), there is no merit to Bell's argument that the State is not allowed to stack the individual purchases. The various drug transactions are evidence of Bell's knowledge of the scope of the conspiracy.

The evidence against Smith, on the other hand, fails to establish he trafficked in 400 or more grams of cocaine or that he participated in conspiracy to do so. At trial, the State presented evidence that, over a one-month period, Smith sold a total of 56.37 grams of cocaine to a confidential informant working with the Darlington County Sheriff's Department. This informant was in no was connected with the conspiracy at hand or any of the admitted co-conspirators. The only other evidence presented was that Smith may have purchased some cocaine from some of the indicted co-conspirators. Smith's friend, Freddie Stevens, testified Smith obtained one ounce of cocaine from Tommy McElveen to sell to the confidential informant. Dennis Jefferson testified that in March or April of 1989, he sold Smith an 8-ball of cocaine.[3] Van Jefferson testified he overheard a conversation between two indicted co-conspirators regarding the sale of cocaine to Smith; however, he did not know if the sale was ever made. Finally, Donald Hodge, who was not indicted as a co-conspirator, testified he purchased cocaine from Smith. This evidence points to the purchase of cocaine for personal use and in no

---

[3] The transcript contains numerous references to the sale and purchase of 8-balls of cocaine. The testimony indicates 8-balls are small quantities used for personal consumption, apparently equivalent to one-eighth of an ounce, or 3.54 grams.

way evinces a connection to the larger conspiracy. While the evidence regarding the sale of some 55 plus grams of cocaine to the confidential informant is sufficient to convict Smith of trafficking in 28 grams or more, but less than 100 grams of cocaine, it is insufficient to prove trafficking in 400 or more grams of cocaine or of participating in the alleged conspiracy to traffic in 400 or more grams. The confidential informant was not tied to the conspiracy. The limited evidence of Smith's purchase of cocaine, without evidence of any specific, significant amounts from the indicted co-conspirators established no more than a buyer-seller relationship which is inadequate to tie Smith to the conspiracy. The evidence fails to establish Smith knew or had reason to know of the scope of the conspiracy. Accordingly, Smith's conviction for trafficking in 400 or more grams of cocaine is reversed.[4]

## II. DOUBLE JEOPARDY

Appellant Bell argues this prosecution of him for trafficking in cocaine was barred by double jeopardy, since he had earlier been acquitted of trafficking in marijuana arising out of the same drug transactions. We disagree.

In September 1990, the Statewide Grand Jury returned an indictment for "Unlawful Drugs" against Bell and others. The indictment was for Case No. 90GS4707009 and stated the following separate counts:

### COUNT I
### TRAFFICKING IN MARIJUANA
S.C. Code Ann. Section 44-53-370(e)(1)(b)

That . . . BOBBY BELL did in Darlington, Florence, Lee and Richland counties and the State of Texas from on or about February 18, 1990, up to and including the date of this Indictment knowingly provide financial assistance and did knowingly conspire to purchase and bring into this State and to sell and deliver more than one hundred pounds of marijuana, a controlled substance under the

---

[4] Because we have reversed Smith's convictions on this ground, we need not reach the other issues raised by him on appeal. We note, however, all other issues raised by Smith are raised by his co-appellants and addressed in this opinion.

provisions of Section 44-53-110 *et seq.*, Code of Laws of South Carolina (1976), as amended, such conduct not having been authorized by law.

\*      \*      \*      \*      \*      \*

## COUNT XII
### TRAFFICKING IN MARIJUANA
S.C. Code Ann. Section 44-53-370(e)(1)(a)

That . . . BOBBY BELL . . . did in Darlington and Florence counties and the State of Texas on or about August 6 through August 10, 1990, provide financial assistance and did attempt to purchase and bring into this State ten pounds or more of marijuana, a controlled substance under the provisions of Section 44-53-110 *et seq.*, Code of Laws of South Carolina (1976), as amended, such conduct not having been authorized by law.

Bell was acquitted of these charges.

In November 1990, the Statewide Grand Jury returned separate indictments against the defendants, including Bell, for Case No. 90GS4707011. The indictment stated the following count:

### TRAFFICKING IN COCAINE
S.C. Code Ann. Section 44-53-370(e)(2)(e)

That . . . BOBBY BELL . . . did in Darlington, Florence, Lee counties and the State of Florida on or about June 1, 1988, through on or about October 31, 1990, knowingly sell, deliver or bring into this State, or provide financial assistance or otherwise aid, abet or conspire to sell, deliver, or bring into this State, or were knowingly in actual or constructive possession of four hundred grams or more of cocaine, a controlled substance under provisions of Section 44-53-110 *et seq.*, Code of Laws of South Carolina (1976), as amended, such conduct not having been authorized by law.

Bell asserts the indictments for trafficking in marijuana and trafficking in cocaine arose out of one conspiracy and, thus, the second prosecution was barred by the Double Jeopardy Clause pursuant to *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct.

2084, 109 L.Ed (2d) 548 (1990) and *State v. Dasher*, 278 S.C. 454, 298 S.E (2d) 215 (1982).

The case at hand is very similar to the 1993 case of *State v. Wilson*, 311 S.C. 382, 429 S.E. (2d) 453 (1993) wherein our Supreme Court found no double jeopardy violation. In *Wilson*, the statewide grand jury indicted family members in December 1989, for various drug crimes. Steve and Walter were indicted along with Ronnie and Teresa for trafficking in more than 400 grams of cocaine since 1982. Ronnie and Teresa were also indicted for trafficking in more than 100 pounds of marijuana since 1979. In April 1990, Steve and Walter were acquitted of trafficking in cocaine while Ronnie and Teresa were convicted of trafficking in cocaine and trafficking in marijuana. In May 1990, Steve and Walter were indicted for trafficking in more than 100 pounds of marijuana from 1985 to 1989 with Ronnie and Teresa. They were subsequently convicted of this charge and appealed. As in the case at hand, Steve and Walter asserted the Double Jeopardy Clause barred the second prosecution pursuant to *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed. (2d) 548 (1990) and *State v. Dasher*, 278 S.C. 454, 298 S.E. (2d) 215 (1982).

In *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed. (2d) 548 (1990), the United States Supreme Court held, in determining whether a subsequent prosecution is barred by the Double Jeopardy Clause, a court must first apply the *Blockburger* test.[5] If application of that test reveals the offenses have identical statutory elements or that one is a lesser included offense of the other, then the inquiry must cease, and the subsequent prosecution is barred. If a subsequent prosecution survives the *Blockburger* test, the court must them determine whether the State, in order to establish an essential element of an offense charged in the subsequent prosecution, will prove conduct that constitutes an offense for which defendant has already been prosecuted. *State v. Wilson*, 311 S.C. 382, 429 S.E. (2d) at 454.

As noted in *Wilson*, 311 S.C. 382, 429 S.E. (2d) 453 (1993), the *Blockburger* test results in no bar to appellant's subsequent prosecution since neither of the statutory offenses charged (trafficking in marijuana and trafficking in cocaine) is

---

[5] 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

a lesser included offense of the other. Further, as in *Wilson*, subsequent prosecution is not prohibited by the *Grady v. Corbin* rule.[6] The entirety of the conduct sought to be established in the first case (trafficking in marijuana) does not establish any element of the offense prosecuted in the subsequent case (trafficking in cocaine). A different controlled substance was the subject of the prosecution in each case and the element of conspiracy common to both prosecutions was proved by different conduct.

In *Wilson*, 311 S.C. 382, 429 S.E. (2d) 453 (1993), the Supreme Court distinguished *State v. Dasher*, 278 S.C. 454, 298 S.E. (2d) 215 (1982) wherein the defendants were charged in both prosecutions with one general conspiracy to violate the Controlled Substances Act. In the case at hand, as with *Wilson*, one prosecution was for a violation of § 44-53-370(e)(1) (conspiring to traffic in marijuana) while the other prosecution was for a violation of § 44-53-370(e)(2) (conspiring to traffic in cocaine). Thus, the State has alleged two separate conspiracies requiring different proof.

Finally, in *State v. Amerson*, 311 S.C. 316, 428 S.E. (2d) 871 (1993), filed the same day as *State v. Wilson*, 311 S.C. 382, 429 S.E. (2d) 543 (1993), our Supreme Court set forth a multi-pronged flexible totality of the circumstances test for determining whether two conspiracies or merely one occurred for the purpose of ascertaining whether double jeopardy bars a subsequent prosecution. The factors to be considered are (1) the time periods covered by the alleged conspiracies; (2) the places where the conspiracies are alleged to have occurred; (3) the persons charged as conspirators; (4) the overt acts alleged to have been committed in furtherance of the conspiracies, or any other descriptions of the offenses charged which indicate the nature and scope of the activities being prosecuted; and (5) the substantive statutes alleged to

---

[6] In *United States v. Dixon*, — U.S. —, 113 S.Ct. 2849, 125 L.Ed. (2d) 556 (1993), the United States Supreme Court held the "same-conduct" rule announced in *Grady v. Corbin* was "wholly inconsistent with earlier Supreme Court precedent and with the clear common-law understanding of double jeopardy" and therefore overruled *Grady v. Corbin*, leaving *Blockburger* as the only test of double jeopardy for successive prosecutions. However, appellant was tried and convicted at a time when *Grady v. Corbin* was still the law. Thus, out of an abundance of caution, we analyze this case under the "same-conduct" rule announced in *Grady v. Corbin* and followed in *Wilson*.

have been violated. *See* also *State v. Wilson*, 311 S.C. 382, 429 S.E. (2d) at 458 (concurring opinion of Justice Toal). In applying this test, we agree with the State that these were two distinct conspiracies with distinct co-conspirators, distinct time periods, distinct places of operation, distinct offenses and distinct overt acts.

### III. ADMISSION OF EVIDENCE OF OTHER BAD ACTS

Appellants Poston, Bell McElveen, Watford, and Hill argue the trial judge erred in admitting evidence of marijuana involvement pursuant to *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923) and its progeny. We disagree.

Appellants Poston, Bell, McElveen, Watford, and Hill all assert error in the admission of evidence of other bad acts relating to drug involvement. Watford and Hill allege error in admission of evidence of marijuana dealing by some of the co-defendants and by some of the State's witnesses. Watford and Hill further argue evidence of cocaine transactions engaged in by them prior to the alleged conspiracy at hand was improperly admitted. Appellants Poston and McElveen assert error in the admission of evidence directly linking them to involvement with marijuana. Appellant Bell asserts error in the admission of evidence of marijuana dealing involving some of the co-defendants, some of the State's witnesses, and himself.

Prior to taking any testimony, but after opening statements, the prosecutor advised the trial judge:

> I believe that in the direct testimony of a number of witnesses that there will be evidence elicited of the prior marijuana transactions, not in any detail, but basically in a *State v. Lyle* concept, to show that their knowledge of these other people basically associations [sic] and identity, and I wanted to alert opposing counsel and the Court to that so that perhaps we could establish how we are going to handle that.

The defense lawyers argued the evidence was not relevant and, even if relevant, its prejudicial effect outweighed any probative value. Counsel expressed concern for a "spill-over" effect whereby even if the testimony is allowed as to one defendant, it will prejudice the others. The prosecutor argued

the evidence fell into all of the *Lyle* exceptions, particularly identity and motive. The judge ruled the prosecutor would be allowed to present the evidence.

In the prosecution of one crime, proof of another direct substantive crime is never admissible unless there is some legal connection between the two upon which it can be said that one tends to establish the other or some essential fact in issue. *State v. Jenkins*, 317 S.C. 183, 452 S.E. (2d) 612 (Ct. App. 1994). The State must also show the evidence sought to be introduced fits into one of the exceptions under *State v. Lyle*, 125 S.C. 406, 118 S.E. (2d) 803 (1923). *Id.* Under *Lyle*, evidence of other crimes is generally inadmissible to prove the bad character of the accused to show he acted in conformity therewith. However, such evidence is competent to show the specific crime charged when it tends to establish (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; or (5) the identity of the person charged with the commission of the crime on trial. *Id.* The test for determining the admissibility of evidence of another crime is its logical relevancy to the particular purpose for which it is sought to be introduced. If it is logically pertinent because it reasonably tends to prove a material fact, it is not rejected merely because it incidentally proves the defendant guilty of another crime. *Id.*

As noted by the State, the majority of the marijuana evidence admitted at trial involved the State's witnesses, not the defendants, and was put forward by the State to "draw the sting" out by having the State introduce evidence before the jury which could affect the credibility of the witnesses. We find no error in the admission of such evidence as it reflected upon the *witnesses' credibility* and was not evidence of *other crimes committed by the appellants*, as contemplated in *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923).

As to the evidence admitted against the appellants themselves and their co-defendants, we also find no error. A thorough review of the record reveals all this evidence was properly admitted under *State v. Lyle* pursuant to *State v. Raffaldt*, 318 S.C. 110, 456 S.E. (2d) 390 (Sup. Ct.

1995) (wherein our Supreme Court held evidence of marijuana dealing by the appellant in prosecution for trafficking in cocaine was admissible as indicative of a common scheme or plan); *State v. Moultrie*, 316 S.C. 547, 451 S.E. (2d) 34 (Ct. App. 1994) (wherein this court held evidence of appellant's prior drug deals was admissible to prove existence and nature of marijuana trafficking scheme); and *State v. Hammond*, 270 S.C. 347, 242 S.E. (2d) 411 (1978) (wherein our Supreme Court held evidence of possession of marijuana was admissible to show motive or intent to distribute cocaine). We further find no prejudice to appellants by the admission of evidence which was unrelated to them.

## IV. REFUSAL TO POLL THE JURY

Appellants Poston, Bell, and McElveen argue the trial judge erred in refusing to poll the jurors regarding the extent of possible premature deliberations. We disagree.

The record shows during the course of the trial, the jury, while on a break, sent a note to the court requesting that each of the defendants stand when their names were called, as the jury was having trouble keeping the defendants straight. Following colloquy with the attorneys, the trial judge indicated he would take the matter up the next morning. When court resumed the next morning, defense attorney DeBerry objected to the court complying with the request stating, "If it is going to be done, I am also concerned that it tends, not necessarily, but it tends to indicate to me that this jury has already begun some type of deliberation. . . . I object to it. I do not think it is proper." Defense attorney Saleeby added, "[They] have got to be back there talking about it and have got to be wondering who is who and who and talking about the case, and the defense has not put up the first witness yet, and . . . I would ask Your Honor, you need to instruct them if they are talking about it they better stop." The trial judge at first indicated he would so instruct the jury, but changed his mind when other defense attorneys began to object to the court identifying the defendants for the jury. Defense attorney Fata then asked the trial judge whether one of the polling questions asked of the jury would be whether they had deliberated or discussed the case, to which the trial judge replied, "No."

Defense attorneys continued to request that the jury be instructed again not to deliberate the case until all of the evidence was in. The trial judge indicated he might change his mind. Attorney DeBerry further stated, "I would ask at this time that we poll the jury about if they have learned anything, read anything, or anything." The jury returned to the court room and the trial judge complied with this request. He then asked "[Are] there any further questions or anything that any of the attorneys have that you would like for me to ask the jury with reference to polling?" There was no response. He then proceeded to instruct the jury on various matters, including the requested instruction that the jury not begin premature deliberation.

We find to no error in the trial judge's failure to poll the jury on the extent of any premature deliberations. First, we find none of the attorneys specifically requested the trial judge to do so. Defense attorney Fata merely asked if such a question would be included in the polling questions. He did not request that it be included. Given the divergent opinions of the several defense attorneys on the handling of the entire situation, it is apparent the trial judge was simply responding to a question asked by one of the defense attorneys and not responding to a specific request. When specifically requested to poll the jurors and instruct them on the these particular matters, the trial judge complied. *See Roche v. S.C. Alcoholic Beverage Control Commission*, 263 S.C. 451, 211 S.E. (2d) 243 (1975) (the purpose of an appeal is to determine if the lower court did something it should not have done or omitted doing something it should have done, and a trial judge will not be reversed for failing to act on a matter that was not submitted to him); *State v. Sinclair*, 275 S.C. 608, 274 S.E. (2d) 411 (1981) (where the appellant obtains the only relief he sought at trial, there is no issue for the appellate court to decide).

Further, even if we did consider attorney Fata's question to be a request, it is clear the trial judge did not make a final ruling on the matter, but changed his mind several times, eventually agreeing to instruct the jury on premature deliberation. In fact, the trial judge clearly indicated he was open to changing his mind in this matter and, after polling the jury as requested, asked if the attorneys had any further polling questions. None of the attorneys made any additional requests.

Finally, we find this issue is controlled by *State v. Hoffman*, 312 S.C. 386, 440 S.E. (2d) 869 (1994). In *Hoffman*, the jury foreman sent a note to the trial judge asking three questions regarding whether the jurors could ask questions to clarify testimony, and making one comment about being willing to work on the weekend. Hoffman argued the note was clear evidence the jury began deliberating during the course of the trial.

The Supreme Court stated the rule that a jury should not begin discussing cases or deciding issues until the evidence is introduced, the arguments of counsel are complete, and the applicable law is charged. The Court added that jurors should be instructed not to discuss the case, even with each other, until the case is submitted to them. The Court stated the trial judge considered the jury foreman's note on its entirety and, in exercising his discretion, found the note showed the jury was merely attempting to define their role in the trial process rather than deliberating on the merits. The Supreme Court held the note's wording supported the judge's findings, adding that the judge gave a curative instruction and, thus, any potential harm was cured.

We agree with the trial judge the note showed the jury was merely confused as to the names and faces and did not indicate they were deliberating on the merits. The trial judge gave the jury a curative instruction, thereby eliminating any potential harm. Accordingly, we find no error.

## V. REFUSAL TO GRANT MISTRIAL
## FOR EVIDENCE OF THREATS

Appellants Poston, Bell, and McElveen allege the prosecutor engaged in misconduct in eliciting evidence of death threats received by a State's witness, and they argue the trial judge erred in refusing their motions for a mistrial based upon the improper evidence and the misconduct. We find no reversible error.

The State called David Anthony Reynolds, an acquaintance of defendant Derrick Randy Lloyd.[7] Reynolds testified he and Lloyd jointly purchased cocaine and Reynolds used cocaine and marijuana with Lloyd. The following exchange took place during Reynolds' testimony:

---

[7] Lloyd was acquitted of all charges.

Q. Now, did [your wife] talk with you on Friday of this past week after you had been listed as a witness about anything that occurred?

A. Yes, sir.

Q. And what, if anything, did she show you that she had found and where did she find it?

A. When she came home that afternoon after 5 she showed me a note that says, "I know where you live." It was under the windshield wiper on her car.

\* \* \* \* \* \*

Q. And have you also received any phone calls in connection with this?

A. She received a phone call that morning of, "Testify and you die." That is what they said and hung up.

One of the lawyers objected, and the judge sustained the objection stating, in the presence of the jury, that "they are to disregard that remark because that remark was not something that was made to this witness, it was made to someone else and it is hearsay."

The State offered the note as an exhibit, and defense counsel objected. The trial judge agreed the speculative nature of the note rendered its prejudicial impact greater than any probative value, and sustained the objection.

During a bench conference, while off the record, defense counsel requested a mistrial. Outside the jury's presence, the judge admonished the lawyers for allowing the testimony to get as far along as it had without objection, and allowing the testimony of the note to come in without objection. The judge denied the mistrial motion.

Counsel argued further the State knew about this information, but did not reveal it, instead apprising defense counsel by ambush from the stand. The State responded it knew about the call four days earlier and first saw the note the previous night. The State indicated it did not reveal it to the defense lawyers because it was under a continuing investigation by SLED and the State was concerned for the safety of the witness and his family.

The judge then had the jury returned to the courtroom and gave them the following instruction:

A few minute ago from the witness stand from this witness you heard some testimony concerning a note on this witness's wife's automobile. I want to instruct you, and I mean for you to do this, you disregard any testimony that you heard concerning that note, and I want to tell you why I am telling you that at this point in time. I don't know what is going to happen later in the trial, I am telling you about right now as far as this trial is concerned at this point in time you disregard any evidence that you have heard concerning that note because there is no evidence at this point in the trial of who might have written it or why a note might have been written or if this note was in any way connected to this case, and if you don't disregard it, it could influence your thinking as far as the outcome of this case is concerned. So, you see, you must disregard any evidence that was brought out through this witness concerning that note. You have got to completely wipe your mind clean of it. Is there anyone who feels that you can't do that now that I have instructed you that you must do that?

None of the jurors responded. The jury was then removed from the courtroom and the judge denied the motion for continuance.

One of the lawyers argued again the State was guilty of prosecutorial misconduct in eliciting testimony regarding threats because the State knew it was inadmissible. The defense again requested a mistrial.

The trial judge stated that although the actions might amount to prosecutorial misconduct, he was not prepared to say that it was. The judge stated he issued a curative instruction to correct a mistake in allowing the evidence, and even asked the jurors if they had any problem following the curative instruction. None of the attorneys indicated any problem with the curative instruction.

When the prosecutor stated there were no further questions of Reynolds, counsel again argued the evidence was solicited purely for prejudice, as it had no probative value. The judge responded, "He put it in there for the reason he stated and I said he couldn't do it and I took it out."

We agree the evidence was improper, since there was nothing to connect the alleged threats with any of the defendants.

*See Mincey v. State*, 314 S.C. 355, 444 S.E. (2d) 510 (1994) ("It would be a 'prostitution of justice' to permit evidence that someone attempted to influence a witness by fear or fright without any evidence that connects the defendant with the tampering."); *State v. Merriman*, 287 S.C. 74, 337 S.E. (2d) 218 (Ct. App. 1985) (the general rule is that references to threats or dangers to prosecuting witnesses are improper unless testimony is offered connecting the defendants with the threats). We also agree the prosecutor engaged in "trial by ambush" in bringing the information out in this manner, particularly where the record demonstrates the prosecutor knew what the witness would say several days in advance of the testimony. The trial judge, however, gave a careful and thorough curative instruction, and disallowed not only the hearsay testimony regarding the phone call, but the unobjected to testimony about the note. None of the defense lawyers objected to the sufficiency of the curative instruction. Under these circumstances, we find no error in the trial judge's refusal to grant a mistrial based upon prosecutorial misconduct. *See State v. Merriman* (where the prosecutor asked the witness a question designed to elicit the fact that the witness was in protective custody, the prosecutor was guilty of egregious prosecutorial misconduct; however, any prejudice was cured by the trial court's careful instruction to disregard the answer).

## VI. IMPROPER IMPEACHMENT TESTIMONY

Appellant Poston contends the trial judge erred in allowing the State's witness to testify on reply regarding the storage of marijuana on Poston's property. We find no error.

On direct examination by his attorney, Poston testified he had never had any "illegal dealings" with anyone. On cross-examination, the State twice asked Poston whether he ever stored 600 pounds of marijuana for a person named "Fireball" Carpenter. Poston stated he had not stored 600 pounds of marijuana for "anyone" and had not stored "600 pounds of anything." After the defense concluded, the State proffered testimony from witness Edgar Freeman that he and "Fireball" Carpenter transported 75 to 150 pounds of marijuana to a place in Bishopville and stored the marijuana in a barn on the property. At the time, a man named "Harp" or "Hart" was

there and opened the barn for them. Freeman identified Poston in court as the man named "Harp."

The defense objected on three grounds. The first ground was the State's failure to identify Freeman as a witness prior to that day. The second ground was a general objection that the "testimony should have come in on direct testimony from the State" and was "not proper rebuttal testimony on behalf of the State." The third objection was that the State should have called "Fireball" Carpenter as he "would be the best evidence." The trial judge overruled the objection finding (1) the State gave the defense the information as quickly as it could, (2) because the name "Fireball" Carpenter had come up, it was proper rebuttal and, (3) because Edgar Freeman was at the property, "Fireball" Carpenter was not necessarily the best evidence. No other argument was made on this point.

On appeal Poston argues the trial judge erred in allowing this testimony as it was improper impeachment testimony pursuant to *State v. Major*, 301 S.C. 181, 391 S.E. (2d) 235 (1990)[8] and *State v. Drew*, 281 S.C. 440, 316 S.E. (2d) 367 (1984).[9] We do not consider this issue, as raised in Poston's brief, because this argument was not raised below and, therefore, is not preserved for appeal. *See State v. Corley*, 318 S.C. 260, 457 S.E. (2d) 1 (Ct. App. 1995) (wherein this court declined to address this identical issue for failure to properly raise the issue in the lower court). The defense never specifically stated why the testimony was improper, but made only a vague, general objection on this ground. The trial judge treated the objection as being on the basis this evidence was being improperly introduced for the first time on reply. Neither did the defense cite the proposition or any case law in support of its motion which it now argues on appeal. It is elementary that an objection to the admission of evidence must be upon a specific ground. *State v. Merriman*, 287 S.C. 74, 337 S.E. (2d) 218 (Ct. App. 1985). We therefore find no error on the part of the trial judge.

---

[8] *State v. Major* provides evidence of prior bad acts which are not the subject of a conviction, but which go to the witness's credibility, are subject to cross-examination; however, the cross-examiner must accept the answer of the witness.

[9] In *State v. Drew* the Supreme Court held improper reply testimony by a State's witness regarding a prior bad act which had been denied by the defendant.

## VII. CROSS-EXAMINATION
## OF WITNESS BERRY

Appellant Poston argues the trial judge erred in allowing certain cross-examination of Carl Berry, a witness Poston presented in support of Poston's character. We disagree.

Berry testified he worked for Poston, who was a "real good boss." Counsel asked Berry if Poston was fair, and he replied, "He was fair and honest, yes, sir." Counsel then asked if Berry had any indication during the time he worked for Poston if Poston was involved in any illegal activities, including drugs. Berry said, "No, sir, none at all." Counsel asked, "Did he appear or were you suspicious that he may be using drugs?" Berry responded, "No, sir."

On cross-examination, the State asked Berry if he knew Jerry High, and Berry responded, High was a friend he'd known for 12 or 15 years. He further stated, "I think he's in jail, I'm not sure." The solicitor then asked, "What is he in jail for?" Poston's counsel objected, claiming this testimony had no relevance. The judge had the jury and the witness removed from the court, then asked the solicitor about the relevancy. She replied that Berry is a major drug trafficker, and was associated with Bowman Brown and Jerry Lee High. She added that Berry admitted knowing a "Mr. Robinson" who was also in jail for drug trafficking, and who "was one of the more major drug traffickers of the Horry County area." The solicitor argued that all of Berry's associates are drug traffickers and most of them pled guilty in operation "Jackpot" several years before.

After some discussion, the judge ruled the evidence was relevant as Berry was put up by the defense to describe his relationship with Poston and, therefore, Berry's relationship with convicted drug dealers was relevant to his credibility.

Berry returned to the stand and, outside of the jury's presence, he stated he understood High was serving time for drug offenses. The State then asked Berry whether he knew several individuals, many of whom went to prison for drug offenses. The judge pointed out that Poston presented Berry's testimony to reflect Poston's reputation and character. He ruled defense counsel "opened the door" as to Poston's reputation, and it would not be fair to not allow the State to reply

with evidence of Berry's knowledge of other people and their reputations. After the jury returned to the courtroom, the State asked Berry about five individuals, four of whom Berry said he knew. Berry testified he also knew these four individuals were serving time for drug offenses.

On appeal, Poston argues the State's impeachment of Berry was totally irrelevant to the issue of whether Poston was trafficking in cocaine. He claims the prosecutor sought to improperly place his character in issue by creating a side issue which diverted the jury's attention from the main issues in the case.

The entire subject of Berry's direct testimony was Berry's relationship with Poston, Poston's character, and whether Berry saw anything which led him to believe Poston was a drug dealer. The point of the cross-examination was to illustrate Berry's credibility, particularly as to assessment of reputation and character. Considerable latitude and discretion should be allowed the trial judge concerning admissibility of impeaching testimony. *State v. Williams*, 263 S.C. 290, 210 S.E. (2d) 298 (1974). *See also Martin v. Dunlap*, 266 S.C. 230, 222 S.E. (2d) 8 (1976) (considerable latitude is allowed in the cross-examination of a witness to test the accuracy of his memory, bias, prejudice, interest or credibility; in doing so, the witness may be asked about irrelevant matters). In this case, the State offered the testimony to test Berry's assessment of Poston's character by showing Berry was associated with several known drug offenders. Under the circumstances of this case, we find no abuse of discretion.

## VIII. IMPROPER JURY ARGUMENT

Appellants Watford and Hill argue the trial judge erred in failing to grant a new trial because the State engaged in improper and unduly prejudicial closing argument by injecting emotion into the jury's consideration. We disagree.

The record reveals, shortly after the alleged improper argument, the court recessed for the day. The following morning, one of the defense attorneys objected to the closing argument and requested a curative instruction. The trial judge gave a curative instruction and counsel requested the judge be more specific in pointing out the improper remark. The trial judge declined to do so, fearing he would be indicating his view was that the argument was in fact made for the purpose of emo-

tion. Counsel then asked if the defense could argue to the jury that the specific objectionable argument of the State was put forth to inject emotion and was not evidence. The trial judge agreed defense could do so provided it was placed before the jury "in the proper fashion." None of the defendants moved for a mistrial on this basis.

We first find we need not reach this issue. As pointed out by the trial judge, there was no objection at the time the prosecutor made the allegedly offensive argument. *See State v. Hawkins*, 310 S.C. 50, 425 S.E. (2d) 50 (Ct. App. 1992) (where the defendant did not object to the argument and there was no motion for mistrial, the issue regarding improper argument could not be raised on appeal); *State v. Wilkins*, 310 S.C. 81, 425 S.E. (2d) 68 (Ct. App. 1992) (because the failure to contemporaneously object is a waiver, an improper argument of counsel that is not objected to at the time cannot be complained of later).

Even of there had been a contemporaneous objection, the trial judge gave a curative instruction to the jury not to decide the case based upon emotions. None of the defendants moved for mistrial, but only argued insufficiency in the charge insofar as it did not specify the improper comments. After a review of the instruction, we find the charge given was sufficient. *See State v. Elkins*, 312 S.C. 541, 436 S.E. (2d) 178 (1993) (the Supreme Court held that notwithstanding no objection was made, the trial judge sua sponte instructed the jury that comments made by the solicitor in closing argument were outside the record and that the jurors should "disregard any inference or any reference to that whatsoever"; if the remarks were prejudicial, the Court's instruction was sufficient to cure any error); *Gathers v. Harris Teeter Supermarket, Inc.*, 282 S.C. 220, 317 S.E. (2d) 748 (Ct. App. 1984) (where attorney told the jury to think with their hearts, not their heads, the court's instruction that the jury could not act through emotion but must weigh the evidence and reach a just decision cured any error); *State v. Nathari*, 303 S.C. 188, 399 S.E. (2d) 597 (Ct. App. 1990) (the trial court is vested with broad discretion in dealing with the propriety of the State's argument; the granting of a mistrial based upon a prosecutor's argument is largely discretionary with the trial court).

## IX. JURY CHARGE

Appellants Bell, McElveen, Watford, and Hill contend the trial judge erred in charging the jury "the hand of one is the hand of all." They argue the "hand of one" charge, given along with the conspiracy instruction, was confusing and had the potential to mislead the jury. They assert such a charge wa inappropriate because it allowed aggregation of amounts of cocaine not connected to the individual appellants, to be wrongly used against them. We disagree.

The trial judge charged the jury as follows:

[I]f a crime is committed by two or more persons who are acting together in the commission of a crime or some offense, that the act of one is the act of all. Now, this is true if there are two people or if there are more than two people involved in the act. If two or more people are together, are acting together, assisting each other in the commission of an offense, the law says that under these circumstances the act of one is the act all, or another way, the hand of one is the hand of all.

\* \* \* \* \* \*

[C]onspiracy is an agreement between two or more persons to do an unlawful act or a lawful act in an unlawful way.

\* \* \* \* \* \*

Because there are several people listed in the indictment in this case, I tell you that you must consider each of them individually and decide (1) whether a conspiracy existed and (2) whether a person was an active party to the alleged conspiracy. Only you may decide the facts in this case as the jury. Only you may determine whether or not a conspiracy existed and, if so, who was involved in it.

Under the indictment concerning the question of conspiracy, the agreement alone, as I said, constitutes the offense. Therefore, before any person may be convicted in that regard, it must be made to appear from the evidence beyond a reasonable doubt that a conspiracy existed, that the person was a knowing party to the conspiracy and that an unlawful act was committed by someone in furtherance of the conspiracy.

\*　　\*　　\*　　\*　　\*　　\*

If the person involved are not acting in concert but are instead acting separately and individually, then you may rightfully conclude that they are not involved in a conspiracy. On the other hand, if two more persons pursue the same unlawful goal, one doing one act and another person performing another act, then the conclusion that they are engaged in a conspiracy to achieve that unlawful goal is justified.

\*　　\*　　\*　　\*　　\*　　\*

[T]here are some other things that I must instruct you regarding the law of conspiracy. (1) Each member of a conspiracy is responsible for every criminal act done by every other member of the conspiracy during its existence and while the person remains in the conspiracy—the hand of one is the hand of all.

The trial judge then charged the jury on trafficking in 400 or more grams of cocaine, as well as trafficking in the lesser amounts under S.C. Code Ann. § 44-53-370(e)(2).

Appellants do not contend the charges relating to conspiracy and the "hand of one" are inaccurate statements of the law. Rather, they argue the "hand of one" instruction is inapplicable to an action where conspiracy is an element of the crime. They assert such a charge vitiates the State's burden of proving the individual defendants had knowledge of trafficking in a certain amount of drugs because actual knowledge is not required under the "hand of one" accomplice theory.

The propriety of a jury charge is measured by what a reasonable juror would have understood the charge to mean. *State v. Bell*, 305 S.C. 11, 406 S.E. (2d) 165 (1991), *cert. denied*, 502 U.S. 1038, 112 S.Ct. 888, 116 L.Ed. (2d) 791 (1992). In deciding whether or not a jury charge impermissibly shifts the burden of proof, the charge must be considered as a whole. *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed. (2d) 344 (1985); *State v. Patrick*, 289 S.C. 301, 345 S.E. (2d) 481 (1986), *overruled in part on other grounds, Casey v. State*, 305 S.C. 445, 409 S.E. (2d) 391 (1991).

We find no confusion in the charge considered as a whole. Neither do we find the charge shifted the burden of proof required by the State.

It is well established that one who joins with another to accomplish an illegal purpose is liable criminally for everything done by his confederate incidental to the execution of the common design and purpose. To admit evidence under this theory, the existence of the common design and the participation of the accused against whom the evidence if offered should first be shown. *State v. Woomer,* 276 S.C. 258, 277 S.E. (2d) 696 (1981).

There is sufficient evidence from which the jury could conclude each of the appellants, with the exception of Smith, was a part of a conspiracy to traffic in 400 or more grams of cocaine. By definition, if the appellants were guilty of conspiracy, they had sufficient knowledge and were acting with one another to commit a crime. The charge, read as a whole, did not indicate the jury could determine the crimes of others, *not connected* to the individual appellants, could be considered against the appellants. Rather, it required the *connection* of the conspiracy of that particular offense. If the appellants were guilty of knowingly conspiring to traffic in cocaine, it matters not that they lacked knowledge of all the acts of the co-conspirators. If those acts were committed in furtherance of the common unlawful scheme and purpose, that of trafficking in 400 or more grams of cocaine, then the appellants as co-conspirators, are responsible for these acts. Thus, while evidence may not directly connect one with the possession of 400 grams or more of cocaine, if the evidence establishes this person conspired with another to traffic in this amount of cocaine, and the other person trafficked in over 400 grams of cocaine in furtherance of their conspiracy, then both are equally guilty of trafficking in over 400 grams of cocaine. The State is not relieved of the burden of showing the appellants *knowingly* conspired to traffic in a certain amount. The jury was still required to find the individual appellants guilty of the knowing participation in the conspiracy to traffic in 400 or more grams of cocaine. It was not incumbent upon the State, however, to prove the individual appellants were each directly in possession of 400 or more grams. The crime is the conspiracy itself. It was for the jury to determine whether the evidence adduced proved the individual appellants trafficked in a certain amount pursuant to the conspiracy. Accordingly, we find no error.

## X. APPEAL OF DAVID
## RAY MATTHEWS

Appellant Matthews states the following issues in his brief:

A. The trial court erred in refusing to allow defendant to present his constitutional challenges and claims.

B. S.C. Code Ann. § 44-53-370(e)(2)(e) violates defendant's right to equal protection by placing arbitrary and capricious values on acceptable conduct through the use of constitutionally impermissible presumptions which ignore the evolutionary and biological properties of the individual.

C. The specific provisions of S.C. Code Ann. § 44-53-370(e)(2)(e) which deny the defendant the opportunity to participate in rehabilitation programs such as supervised furlough, extended work release, and parole violates S.C. Const. art. XII, § 2.

We affirm his conviction, as we find the issues he raises to be manifestly without merit.

As to Issue A, the trial judge listened for quite some time to Matthews' claims after the verdict and at the separate sentencing hearing, and simply advised him he was arguing to the wrong forum. The judge advised Matthews that the judge was obligated to follow the law, and if Matthews believed there was something wrong with the law, he had to take the matter up in the proper forum. Hence, it is simply factually incorrect for Matthews to claim the trial judge refused to allow him to present his constitutional challenges and claims.

As to Issue B, Matthews' Equal Protection argument, we find it wholly without merit. Matthews defines the class which suffers the unconstitutional impact of this legislation as those who are predisposed due to evolutionary and biological properties to use drugs. He refers to these individuals as the "drug people." It is his assertion that these "drug people" are genetically programmed to use drugs, and must do so to physically function. The upshot of his argument is that human beings have no free will, but are controlled by evolution and natural selection, and that "drug usage is merely a method of altering the mind to conform with a rewired program within the brain as a reaction to the preceived [sic] environment."

First, even if we agreed with Matthews' theory, Matthews has presented no evidence to establish he is a member of the very class he defines. That is, there is no evidence Matthews is one of those persons who, due to evolution and biology, is predisposed to drug usage. *See Schneider v. State*, 255 S.C. 594, 180 S.E. (2d) 340 (1971) (the constitutionality of a statute may not be questioned by one whose rights are not invaded and injuriously affected thereby).

Second, the challenged legislation does not draw class distinctions on its face. It is a neutral law. Section 44-53-370(e)(2)(e) declares it unlawful for "any person," not simply persons who are genetically or physiologically predisposed to drug use or abuse, to violate the section.

Third, because the statute is facially neutral, Matthews must establish this neutral law has a disproportionately adverse impact upon a certain minority, that is, as he defined one minority, those who are predisposed to drug usage. Again, he has presented no evidence of such a disparate impact.

Fourth, under traditional equal-protection analysis, even if a neutral law has a disproportionately adverse impact upon a certain minority, it is unconstitutional only if that impact can be traced to a discriminatory purpose. *State v. Brown*, 317 S.C. 55, 451 S.E. (2d) 888 (Sup. Ct. 1994). The phrase "discriminatory purpose" implies that the decision maker selected or reaffirmed a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group. *Id.* Once again, Matthews has presented nothing in the way of creditable evidence that by enacting Section 44-53-370(e), the legislature intended to affect an adverse impact on a select group.

Finally, and most importantly, Matthews does not explain why the legislature may not criminalize the trafficking or sale of large quantities of drugs, even where the person selling or trafficking in the drugs is predisposed to drug usage. The fact that one may be predisposed to use drugs does not explain or justify the individual trafficking in over 400 grams of cocaine.

Statutes are to be construed in favor of constitutionality and this Court will presume a legislative act is constitutionally valid unless a clear showing to the contrary is made. *State v. Brown*. We conclude Matthews has failed to carry his burden of demonstrating clearly the uncon-

stitutional nature of the statute prohibiting trafficking in cocaine.

As to Issue C, Matthews did not raise this issue below;  accordingly, we will not considered it on appeal. *State v. Hoffman*, 312 S.C. 386, 440 S.E. (2d) 869 (1994) (an issue which has not been raised to the trial judge is not preserved for appellate review).

Accordingly, we affirm Matthews' conviction.

Affirmed in part and reversed in part.

GOOLSBY, J., and HOWARD, Acting J., concur.